J. B. McPHAIL v. BOARD OF COMMISSIONERS OF CUMBERLAND COUNTY.

*Counties—County Commissioners—Contract for Bridges—Delegation of Authority—Quantum Meruit.*

1. Under Ch. 370, Acts of 1887, the County Commissioners alone have the power to determine upon the necessity for the construction or repair of bridges and to contract for the same, and such power cannot be delegated to the Township Supervisors or others. After deciding that a bridge shall be built or repaired, they can appoint the Township Supervisors or other agents to have the work done at a price fixed by the Commissioners, or may refer the matter beforehand, to such Supervisors to ascertain and report the facts and lowest price at which the work can be done, but the Supervisors have no power to accept a bid without the approval of the Commissioners.

2. An order passed by a board of County Commissioners that "the repairs of Evans Creek bridge are referred to R. J. H. and A. McN." conferred no power upon such persons to make a contract, but only to ascertain and report to the Commissioners, for their action, the facts connected with and the cost of the repairs.

3. Where repairs have been made on a bridge, and the work has been accepted by the county, the contractor may recover therefor on a *quantum meruit* for the reasonable and just value of the work and labor done and material furnished, though the action was brought on a special contract for the repairs made with Supervisors who had no authority to make the contract.

CIVIL ACTION, begun in justice's court, and heard on appeal by *Greene, J.*, and a jury, at April Term, 1896, CUMBERLAND Superior Court. The plaintiff declared upon a contract for building a bridge, at the price of twenty-three dollars and fifty cents. The defendant, when the case was called, objected to the court's trying the case, for that there was no law authorizing the holding of a court at this time, and that it had no jurisdiction to try the case at this time. Objection overruled and defendant excepted.

The plaintiff, in his own behalf, testified that he attended the letting of the contract for building the bridge, which had been duly advertised. That there were four or five bids made, and his was the lowest, and the contract was awarded to him at his bid of $23.50. That the bidding was open, fair and honest, with no collusion or understanding with any one. That on the way home from the bidding he agreed with one Harrison, who had been a bidder, and another, that if they would assist him he would share equally with them on the amount to be received. That on the next week these three, with a brother of plaintiff, finished the work in one day, the material being on the spot, furnished by the county. That the work was well done, and the chairman of the Board of Supervisors gave plaintiff an order upon the defendants for the money, after a thorough examination of the work and receiving the bridge.

On cross-examination plaintiff stated that he knew he had a good bargain.

R. J. Harrison, a witness for plaintiff, testified that he was chairman of the Board of Supervisors. That the bridge in controversy was over a stream upon one of the main roads leading to Fayetteville. That the bridge was in bad order, if not in a dangerous condition, when he reported it to the County Commissioners. That he was ordered by them to have it rebuilt. Here the records of the County Commissioners were read, as follows :

" March 6, 1893 : Ordered that the repairs of Evans Creek Bridge be referred to R. J. Harrison and Alex. McNeill."

Harrison testified that he did not know anything about the records of the Commissioners, as he had never seen the same, but he did know that he was directed by them to have the bridge rebuilt. That in pursuance of this authority he had advertised the bridge to the lowest bidder, with the concurrence of McNeill, who was one of the Supervisors, and upon the day named McNeill could not attend by reason of the extreme illness of his mother. That witness let the bridge to the lowest bidder, the plaintiff. That there were several bidders. That there was no fraud or collusion with any one, but the whole matter was open, fair and above board. That he examined the work when done, accepted the bridge and gave plaintiff an order for his money.

On cross-examination he testified that he knew that the price was high—that the work was not worth $23.50, but felt bound to accept the lowest bid and let the contract, as he had duly advertised the letting and the bridge was a necessity. That he would have let the same at the price of $50, if that had been the lowest bid.

Alex. McNeill testified that he was one of the Supervisors; had posted one of the notices ; was prevented from attending the letting by reason of the illness of his

McPHAIL *v.* COMMISSIONERS.

mother.  That he would have let the bridge at the price of $100, if that had been the lowest bid.  That the whole matter was open and fair, so far as he knew.

Lonsford Lee testified for plaintiff that he was overseer of the road.  That the bridge had been in need of repairs for several months, and was in a dangerous condition.  That the work was well done.  That the work of defendant and his assistants was worth $5.30 per day.

E. C. Harrison, a witness for the plaintiff, testified that he was a bidder, his bid being $28.  That there was no secret bargain or collusion between himself and the plaintiff, but the matter was open and fair throughout.  That he did agree afterwards to assist plaintiff and share the contract price.

The defendants offered witnesses who testified that the work was not worth more than $2 to $4.50.  The defendants insisted that they were not bound upon a special contract, but only upon " *quantum meruit;* " that they had made no contract; that the order of Commissioners, made at March meeting, did not authorize Harrison to bind them by any contract, and asked the court to charge the jury in accordance with their contention.  The court charged the jury that, if they believed the evidence, the defendant was liable for a contract made with Harrison for them at the agreed price, $23.50, unless there was fraud in the transaction; that they ought to consider the excessive charge, if any, for the work, and all the circumstances testified to upon the question of fraud, and if they should find that there was no fraud, that they should answer the issue in favor of the plaintiff.  Defendants excepted.

There was a verdict for plaintiff at contract price, on the issue.  Defendant moved to set aside verdict as contrary to weight of evidence.  Motion overruled.  Defend-

ants excepted.    After the refusal of a motion for new trial for reasons stated, there was judgment for plaintiff, and defendants excepted and appealed.

*Mr. Geo. M. Rose*, for plaintiffs.
*Mr. N. W. Ray*, for defendants (appellants).

CLARK, J. : As *The Code*, Section 2034, originally stood, when bridges were beyond the reasonable capacity of the Road Overseer and his hands, the Board of Township Supervisors were empowered to contract for the building, keeping and repairing of the same, with the concurrence of the Board of County Commissioners.    Even under that statute any contract made by the Township Supervisors would not have been valid till reported to and concurred in by the County Commissioners.    The Township Supervisors here pursued no improper plan in advertising for the lowest bid, but they erred in supposing that they were bound to accept it, no matter how unreasonable, or that they could accept it at all without the concurrence of the County Commissioners, to whom they should have reported it for approval.    But even as thus guarded, the Legislature of 1887 (Chapter 370) thought there was room for abuse, and struck out even this qualified authority in the Township Supervisors, and provided that the contracts in all such cases shall be made by the County Commissioners.    The determination whether a bridge or its repair is needed, and the sum to be paid, is thus confided to their judgment and cannot be delegated.    When they have decided that a bridge should be built or repaired, they can appoint the Township Supervisors or others agents to have the work done at a price fixed by themselves,—that would be a mere ministerial duty.    And to enlighten themselves, they can refer the matter beforehand to the

Township Supervisors (or possibly others) to report the facts and the lowest price at which the work can be done, subject, of course, to their own approval. The order passed by the Commissioners : "The repairs of Evans Creek bridge are referred to R. J. Harrison and Alexander McNeill," meant no more than that and was valid.  If it had meant to confer upon the referees the power to determine either the question whether the repairs should be made or the discretion to fix the amount to be paid, without being subject to approval by the County Commissioners, the order would have been invalid ; besides, the words of the order cannot, without straining, be construed to carry such powers.

As the repairs have been actually made and accepted, the county is bound on a *quantum meruit* for the reasonable and just value of the work and labor done and material furnished, but not for the attempted contract of Harrison and McNeill, which, under the law, they had and could have no authority to make so as to bind the county.

The question raised as to the legality of the term of the court at which the action was tried is settled by the decision in *McNeill* v. *McDuffie* at this Term.

Error.