FORD REALTY & CONSTRUCTION CO. v. CLEVELAND (City).

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 8393. Decided April 16, 1928.

Syllabus by Editorial Staff.

63. ALLOTMENTS & SUBDIVISIONS—799. Municipalities.

An allotment company laying water mains and pipes on its land at its own expense has no equitable assignment against the property or municipality in which it is located.

Error to Common Pleas.
Judgment affirmed.

Klein, Harris & Diehm, Day & Day, Cleveland, for Ford Realty & Construction Co.

Alfred Clum, Esq., Cleveland, for Cleveland.

STATEMENT OF FACTS.

The Ford Realty & Constr. Co. brought this action to recover $16,640 it claims to have paid for constructing, in the street of what was then West Park and now a part of Cleveland, in an allotment owned by it, certain water mains, connections and water plugs, in order to supply water to the purchasers of lots in a real estate division which belonged to it, and that, by virtue of a written offer that it made to the Village of West Park, it agreed to put these water mains in and to make all connections and place the water plugs without any expense of any sort or kind to the Village, and that the Village was to have the right to utilize and use any or all of these mains as a part of its system for distributing water, and that no action which the village should take, should be deemed an appropriation of property, which in terms at least belonged to the Ford Realty & Constr. Co.

In pursuance of this written offer and the consent of the village council, the Ford Co. installed the water mains, plugs, and equipment necessary for the supplying of water to the houses in its allotment, and this was done as far back as 1919. Subsequently, by an agreement between the village and the city, West Park became a part of Cleveland, the city acceding to all the rights and liabilities and becoming liable for all the contracts and other obligations of West Park.

In 1909, before the establishment of West Park, when the vicinity was known as Rockport, an agreement had been entered into between the authorities of Rockport and Cleve-

land, that the city would furnish water to the village and for that purpose mains were to be laid and pipes laid for the distribution of water, at the expense of Rockport entirely, and that the city should be at no expense whatever for the construction of this water system, but would furnish water at a price agreed upon in that contract. In this contract of 1909 it was provided that, in case any terrritory outside of Rockport should thereafter be furnished water, the extensions might be made to the outlying territories, and the city should furnish water to the outlying territory, and in that event the outlying territory should contribute for the part of the expense to Rockport, for what it had been compelled to pay in the way of establishing mains, and so forth. The contract of 1909 also contained a provision that in case the village were annexed to Cleveland, these communities that had paid for the extension of the mains in the additional territory, should be reimbursed to a proportionate part of the money that Cleveland had paid to Rockport, if any.

It is important to bear this contract of 1909 in mind, because the right is claimed by the Ford Co. by virtue of this contract, to be reimbursed for any money that it had paid out for the establishment of this part of the water system. That they claim by virtue of an equitable assignment at least.

VICKERY, J.

Under the conditions of this contract we are at a loss to understand what there was to assign. If you take the entire contract with Cleveland, the city was to be put to no expense whatever, and if you take the written offer made by the Ford Co. to West Park, it would be difficult, to see what there was to assign in equity or in law, because there was no right that Rockport (Vil.) or West Park (Vil.), or anybody else had against Cleveland.

Now when Cleveland and West Park made its contract by virtue of which West Park became a part of Cleveland, there was no provision that Cleveland should pay anything to West Park for its water system, or for the laying of its pipes, nor is there any allegation in the petition that anything was paid by Cleveland. On the contrary, nothing was paid. Consequently, under this provision of the contract there would be nothing due to West Park or anyone claiming through West Park.

It is further claimed that Cleveland is liable because the title to these pipes and mains and plugs, and so forth, always remained in the Ford Co., and the city taking possession of them took property without due process of law, in violation of the constitution of the State of Ohio and the United States.

We are not impressed with this argument.

In so far as we learn from the record, the water pipes that were laid by the Ford Co. were for the purpose of enhancing the value of their own allotment and, undoubtedly, the enhanced value of the lots was charged against the property owners who purchased lots in this allotment, who probably would not have purchased them but for the installation of the water.

Whichever view you take of this case, whether they claim by virtue of an equitable assignment where there was nothing to assign, or any other way, or if they claim by virtue of the taking of property without due process of law, the Ford Co. is not entitled to re-

cover against Cleveland, because by all the legislation, and all the ordinances and all the contracts, Cleveland was to be put to no expense at all for the laying and maintaining of these pipes, and there was no contract, when West Park was annexed to Cleveland, whereby it agreed to pay anything.

Consequently, there is no right of action and the court below is right in deciding as it did, and there being no error in the record, the judgment is affirmed.

(Sullivan, PJ., and Levine, J., concur.)