### CITY OF DURHAM v. R. H. WRIGHT.

(Filed 25 November, 1925.)

**1. Municipal Corporations—Cities and Towns—Streets—Dedication—Permissive User.**

Where a store building has been built by the owner several feet from the line of a city street, with projections or pilasters at each side up to the street line, and has excavated the cellar of the store thereto, it is sufficient evidence that no dedication to the public use was intended to be made or actually made by the owner, and the use of this strip of land by the public in going into and out of the store, and for kindred purposes, amounted only to a permissive user.

**2. Same—Constitutional Law.**

The principle upon which private property may not be taken for a public use, without just compensation, though not contained in the Constitution of our State, has become a part of our organic law.

**3. Same—Statutes.**

In order for a city to acquire by condemnation private lands for street purposes under a special statute providing that in the absence of any contract or contracts therewith in relation to lands used or occupied by it for the purposes of streets, etc., it shall be presumed that the land has been granted to it by the owner, unless the owner, etc., at the time apply for an assessment within two·years, etc., it must be shown that the *locus in quo* had been taken and adversely used for street purposes for the stated time, and a permissive use is insufficient.

**4. Same—Prescriptions.**

In order for a municipal corporation to acquire the lands of a private owner under a claim of dedication by prescription, it is required that there must be a continued and uninterrupted adverse use, and a permissive use is insufficient.

APPEAL by plaintiff from *Calvert, J.,* at March Term, 1925, of DURHAM. No error.

This was a condemnation proceeding brought by the city of Durham against defendant to widen "East Main Street" on the south side and under its charter to condemn a part of defendant's land for the purpose of making a sidewalk in front of defendant's property approximately 10 feet wide. The property to be condemned for the sidewalk is particularly described in the petition. It does not include the *locus in quo* which the city claims, but certain "pilasters" or projecting wall.

Defendant contends: "That it is the purpose of plaintiff to condemn the two very small pieces of land belonging to defendant and described in the petition and to pay for the same what the commissioners shall or have assessed as the value of the same, and also to acquire by means of its petition, title not only to the two pieces of land described in the

petition, but to the strip 34.3 (4) feet long and about 35 inches wide, which lies between the two small parcels sought to be condemned. Plaintiff claims to own the last described piece of property by reason of occupancy for two years by the public. But this claim is unfounded because it has neither been dedicated nor donated to the public by the owner; nor has it been acquired by the public or by the city by two years possession, hostile and adverse to the owner. It has been for two years and more used in connection with defendant's store; and any use by the public has been always permissive, and for the benefit of the store and its occupant; and defendant has always occupied the subsurface of said land with his basement, and never thought of surrendering possession of the surface, nor of donating it to the public. Plaintiff well knew this; but now seeks to condemn the two pieces of land at the ends of this strip; and 'to tack' to the ownership of those two pieces its claim of adverse possession to the remainder by reason of its alleged occupancy, and thus acquire defendant's property for a small fraction of its real value."

This suit narrows itself to a contest over whether the city of Durham or defendant, Wright, owns a strip of land *34.4 feet in length* and *about 35 inches (nearly 3 feet) in width.* It was agreed between the parties to the suit "that the facts raised by the pleadings and evidence should be found by the court instead of a jury." The facts found show that about the year 1894, Rufus Massey, a resident of Durham, when he erected the two-story brick buildings on his lot on south side of East Main Street in the city of Durham, had the north walls set back about 35 inches (nearly 3 feet) from the northern boundary line of the lots on which they were erected and have remained so ever since. A strip 34.4 feet in length and 35 inches in width, left in front of his store building, and between the building and the street line, the east and west walls of the building project and extend (pilasters) to the street line. There were two stores separated by partitions on the first floor and under the building there is a basement and it takes up the entire land to the street line. Defendant purchased the land from the heirs at law, including the *locus in quo,* 5 February, 1920. Massey died in the year 1919. Prior to 1912, Massey had planks laid on the *locus in quo,* and while the planks were laid the city of Durham laid a brick sidewalk in front of the lot, but not on the *locus in quo.* In 1916 Massey took up the planks on the *locus in quo* and put down cement. Later the city replaced the brick with a cement sidewalk.

The court below found as a fact: "That neither the defendant nor his predecessors in title have ever admitted the right of the city to control the strip of land between the north wall of said buildings and the northern boundary line of said lots, nor have they ever admitted that the

city of Durham had any title thereto, and said city has never paid the defendant nor his predecessors in title, any compensation for the land comprising said strip, and those under whom he claims have at all times claimed title thereto. . . . It is also admitted that neither the defendant nor his predecessors in title have ever done anything to prevent the public from using said space. . . . That from 6 March, 1899, to the date of the condemnation proceeding above referred to, persons, both residents and nonresidents of the city of Durham, could and did use the strip of land in question for usual or ordinary purposes of a sidewalk, as for instance that they did come upon it and did walk over and across it to look in the windows of the stores, and also when many persons were using the sidewalk outside, the northern line of the property in question, which frequently happened, persons would and did divert their steps therefrom and passed to and fro along the said strip and between the pilasters herein condemned."

The other facts found are mostly evidentiary on both sides and will not be repeated, as not material.

The court below found the facts—that the *locus in quo* was the property of defendant. Plaintiff assigned the following error and appealed to the Supreme Court: "For that the court included the following in the finding of facts: (a) The court further finds that there has not been a dedication of the land in question; that there has not been a prior condemnation than that herein; and that if the act of 6 March, 1899, has application to such property as that in controversy, then there has not been such use and occupation of the said property by the city of Durham as to constitute a taking within the meaning of the statute."

*W. J. Brogden and W. S. Lockhart for plaintiff.*
*Fuller & Fuller and Pou & Pou for defendant.*

CLARKSON, J. The city of Durham claims to own the *locus in quo*— a strip of land 34.4 feet in length and 35 inches (nearly 3 feet) in width, between the projections (or pilasters) of the sidewalks of the building. It has never paid any "just compensation" for it, but claims it (1) by dedication, (2) by prescription, (3) under statutory dedication or authority. We do not think the position of the city can be sustained.

In *Shute v. Monroe*, 187 N. C., p. 683, it was said: "The Anglo-Saxon holds no material thing dearer than the ownership of the land; his home is termed his 'castle.' Although there is nothing in the Constitution of North Carolina that expressly prohibits the taking of private property for public use without compensation (the clause in the United States Constitution to that effect applies only to act by the United States

and not to government of the State), yet the principle is so grounded in natural equity and justice that it is a part of the fundamental law of this State that private property cannot be taken for public use without just compensation. *Johnston v. Rankin,* 70 N. C., 555." *Wade v. Highway Commission,* 188 N. C., 210; *Stamey v. Burnsville,* 189 N. C., 39; *Finger v. Spinning Co., ante,* 74.

*Hoke, J.,* in *Tise v. Whitaker,* 146 N. C., p. 375, lays down the rule long recognized in this State: "It is well understood with us that the right to a public way cannot be acquired by adverse user, and by that alone, for any period short of twenty years. It is also established that, if there is a dedication by the owner, completed by acceptance on the part of the public, or by any persons in a position to act for them, the right at once arises, and the time of user is no longer material. The dedication may be either in express terms, or it may be implied from conduct on the part of the owner; and, while an intent to dedicate on the part of the owner is usually required, it is also held that the conduct of the owner may, under certain circumstances, work a dedication of a right of way on his part, though an actual intent to dedicate may not exist. These principles are very generally recognized and have been applied with us in numerous and well considered decisions," and cases cited. *Draper v. Conner,* 187 N. C., 18, and cases cited; 18 C. J., pp. 40, 41 and 51.

It is, we think, sufficiently clear from the findings of fact that neither the defendant, nor his predecessor in title, ever intended to dedicate the strip of land to the public for use as a sidewalk, and the projections (pilasters) of the east and west walls of the building were made and erected for the purpose of marking the boundaries of the lot, and were notice to the world that the strip of land connecting them was a part of the lot upon which the projections were erected, thus negativing a dedication.

The land under the *locus in quo* was admittedly used as a basement by defendant and those under whom he claimed. The fact that the public crossed the *locus in quo* to get to the place of business, go into the stores, or went around the pilasters and got on the *locus in quo* as they walked along the street, was only permissive. At all time the pilasters stood there marking the corners of the lot. The facts show that there was no adverse user by the city and no dedication by the owners. Plaintiff further contends that there was a statutory dedication and cites the charter of the city of Durham, chap. 142, sec. 66, Private Laws 1921, and chap. 235, sec. 60, Private Laws 1899, ratified 6 March, 1899, which is as follows: "That in the absence of any contract or contracts with said city in relation to the lands used or occupied by it for the purpose of streets, sidewalks, alleys or other public works of said city,

signed by the owner thereof, or his agent, it shall be presumed that the said land has been granted to said city by the owner or owners thereof, and said city shall have good right and title thereto, and shall have, hold and enjoy the same as long as the same shall be used for the purpose of the said city, and no longer. Unless the owner or owners of said land, or those claiming under them shall, at the time of the occupation of the said land, as aforesaid, apply for an assessment of said land, as provided for in the charter of said city, within two years next after said land was taken, he or they shall be forever barred from recovering said land, or having any assessment or compensation therefor; *Provided,* nothing herein contained shall effect (affect) the rights of feme coverts or infants until two years after the removal of their respective disabilities." There is a slight difference between the two acts, but not material.

The record shows that none of those who claim the *locus in quo* have been under disabilities since 6 March, 1899. From a careful anlaysis of this section, it will be seen before this statute is applicable that the *locus in quo* must be *used or occupied* for the purpose of a street, and the land *was taken*. In other words, from a construction of the entire statute, there must be an adverse user before the city can acquire title. Black's Law Dictionary, 2 ed., p. 846, defines "occupation": "In its usual sense 'occupation' is where a person exercises physical control over land. Thus, the lessee of a house is in occupation of it so long as he has the power of entering into and staying there at pleasure, and of excluding all other persons (or all except one or more specified persons) for the use of it. Occupation is therefore the same thing as actual possession. Sweet. The word 'occupation' applied to real property, is, ordinarily, equivalent to 'possession.' In connection with other expressions, it may mean that the party should be living upon the premises; but, standing alone, it is satisfied by actual possession. *Lawrence v. Fulton,* 19 Cal., 683." Occupied indicates *pedis possessio*. Black, *supra,* p. 1134, defines "take": "To lay hold of; to gain or receive into possession; to seize; to deprive one of possession of; to assume ownership. Thus, it is a constitutional provision that a man's property shall not be *taken* for public uses without just compensation. *Evansville & C. R. Co. v. Dick,* 9 Ind., 433."

Plaintiff contends further: "In addition to a statutory dedication in this case, there was a dedication by prescription." In 9 R. C. L., p. 772, it is laid down: "To establish an easement by prescription there must be, first, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; third, a claim of right adverse to the owner of the soil, known to and acquiesced in by him." *Draper v. Conner, supra;* 19 C. J., p. 873, *et seq.* The facts show no prescriptive right. There was no grant, dedication, prescription or statutory authority of the easement.

In the present case it is admitted that nothing has been paid for the *locus in quo* by the city of Durham. The municipality claims that it has a right to the land for street purposes, by dedication, prescription and statutory authority. We think the entire evidence shows that defendant and those from whom he claimed always exercised control and dominion over it and never dedicated it to the city, nor does the evidence show any prescriptive right. The "pilasters" were landmarks of ownership. The going in and out of the store over the *locus in quo* was permissive and the public going around the "pilasters" and over the *locus in quo* in no way gave the city an easement. There is no evidence from the findings that give a right to plaintiff to have an easement over this land for street purposes either by dedication, prescription or statutory authority. The statutory authority was never complied with, it neither occupied nor was the land taken by the city. The city desires the land for street purposes, and just compensation must be given the owner. The law gives the machinery. A jury assesses its value.

For the reasons given, we find

No error.