BLANKENSHIP *v.* DOWTIN.

---

J. H. BLANKENSHIP AND WIFE, LANIE B. BLANKENSHIP, v. R. J. DOWTIN AND WIFE, AGNES L. DOWTIN, AND F. E. PRESNELL.

(Filed 27 May, 1926.)

**Deeds and Conveyances—Easements—Water Supply—Land Development —Reservation in Deed—Auction—Sales.**

Where land is subdivided into lots and sold with reference to a recorded plat, reserving in the owners a lot on which there is a water supply, and it is announced at the public sale that this water supply was available to the purchasers of the other lots, and conveyances are made with reference thereto, and recorded, and thereafter the reserved lot is also conveyed by deed reciting that the water supply thereon was available to the other purchasers, the reserved lot so acquired is subject to the condition imposed thereon.

APPEAL by plaintiffs from *McElroy, J.*, at January Term, 1926, of BUNCOMBE. Reversed.

The facts will appear in the opinion.

*Wells, Blackstock & Taylor for plaintiffs.*
*No counsel for defendants.*

CLARKSON, J. The defendants, R. J. and Agnes L. Dowtin, were owners of a tract of land, 18.6 acres, on Brevard road in Buncombe County, N. C. On 4 July, 1924, they had the same subdivided into approximately 65 lots. The plat of the land was duly recorded in the office of the register of deeds of Buncombe County, the plat is entitled: "Pine Lane subdivision, property of R. J. Dowtin, Esq., Brevard road, Buncombe County, N. C., subdivided for Horney Brothers, Asheville, N. C., 4 July, 1924."

One of the lots in the plat had on it marked "reserved," and this was shown on the map which was recorded. At the public sale of the lots on 7 August, 1924, public notice was given that the purchasers of the lots would have the right, privilege and option, of using the water from the springs situated on the property marked "reserved." At the time of the sale, two dwelling-houses were on lot 64. These dwelling-houses were situated on a hill and the springs furnished water from the lot "reserved" nearly 200 yards away. There was at the springs on the lot marked "reserved" a hydraulic ram with pipes to lot 64 and water was forced into the houses by means of the hydraulic ram. Plaintiffs purchased lot 64 at the auction sale with the houses equipped for use of water to be supplied from said springs and pipes, etc., connected with same. Full notice of the water rights was given by the auctioneer to lot purchasers at the public sale. A deed was made, dated 7 August, 1924, the date of the public auction sale from R. J. Dowtin and Agnes L. Dowtin to J. H. Blankenship and wife (Lanie B.), the plaintiffs. After describing the land by metes and bounds, the following is in the deed: "Containing four (4) acres, and being lot No. 64, as shown on the plat of Pine Lane subdivision made by C. V. Verner, surveyor, 4 July, 1924, and recorded in the office of the register of deeds for Buncombe County, North Carolina, in Book ........, page ......... This also conveys to the party of the second part, heirs and assigns, the right to use the water from the tract marked "reserved" so long as the springs shall be kept in shape, or until water can be secured on the property from the city of Asheville, or other source."

This deed shortly after, on 27 August, was duly recorded in the register of deeds office for Buncombe County.

The auctioneer, at the time plaintiffs purchased lot 64 stated—the defendant, F. E. Presnell, being present and hearing the announcement—that the springs were connected with the houses on lot 64 by a pipe line and that the houses were being supplied with water from the springs on the "reserved" lot, by means of a hydraulic ram, and that the houses were being sold fully equipped with water supply, bathrooms and electric fixtures.

Plaintiffs took possession of lot 64, on which was situated the dwellings, immediately after receiving the deed for same, and on 3 June, 1925, almost one year thereafter, defendant, Presnell, purchased from defendant, R. J. Dowtin and wife, the lot marked "reserved," on which is situated the springs, hydraulic ram, etc. It was in evidence that plaintiffs had no other water, that they considered pure, upon lot 64 purchased at said sale, and that for almost a year before defendant, Presnell, purchased the lot marked "reserved" that the said dwellings on lot 64 were being supplied with water by the pipe line, hydraulic ram, etc., from the springs on said lot marked "reserved."

The deed from the Dowtins to Presnell for the lot, on which the springs, hydraulic ram and *quasi*-water system is located, after describing it by metes and bounds, has this in it: "And being all of that tract of land marked 'reserved,' as same is shown on a plat of the Pine Lane subdivision, property of R. J. Dowtin *et al.,* on the Brevard road. . . . This conveyance is made subject, however, to the right of the abutting property owners to obtain water at a spring on the property until water is available otherwise."

The defendant, Presnell, after purchasing the lot built a fence around the lot "reserved" and turned it into a pasture for his cow. The *"quasi-*water system," which was intact with lot 64 when the lot was sold the plaintiffs, and the hydraulic ram from the springs on the lot marked "reserved" were disconnected by the defendant, Presnell, which cut off plaintiffs' water supply. It is in evidence that Presnell struck with a hammer two or three blows to the ram and made the assertion "he would fix it so that the people on the hill could not get water." It was in evidence that Presnell put up a notice on the lot marked "reserved" forbidding any one to enter on the land. It was in evidence that after defendant, Presnell, had removed the pipes from the springs to the dwelling and disconnected same from the hydraulic ram, the only means of water supply for the plaintiffs' dwellings on the said lot 64 was such water as was carried in buckets from wells and neighbors' springs, and that the city of Asheville had never extended its water lines any nearer to the residences of the plaintiff than at the time of the sale, in August, 1924. It was in evidence that the water from Asheville had not been put in that locality for plaintiffs to secure same, and no other sufficient supply was available.

On this state of facts at the close of plaintiffs' evidence, defendants moved for judgment as in case of nonsuit. C. S., 567. The motion was allowed. Plaintiffs excepted, assigned error and appealed to the Supreme Court.

We think, under all the facts and circumstances of this case, taking the evidence in the light most favorable to plaintiffs, giving them the benefit of every reasonable intendment and every reasonable inference to be drawn therefrom, the motion should not have been granted.

In the case of *Hunstock v. Limburger*, 115 S. E. (Texas), p. 327, the facts were that Dora Dozier was the owner of a lot in San Antonio, Texas, on the premises was a dwelling-house, outhouses and a *certain private water main* owned by the said Dozier. The water main, 2-inch pipe, 30 inches underground, ran from the dwelling-house to the San Antonio waterworks. She conveyed the lot to two parties "together with all the improvements, rights and appurtenances thereto, in any wise appertaining or belonging." Subsequently, the plaintiff acquired the land under the same language as in the Dozier deed to the two parties. The main carried the water for domestic purposes to the dwelling-house from the waterworks. Dora Dozier afterwards sold the water main along the street to defendant, who owned land along the street, who in turn sold and was selling to others the privilege of connecting with the water main and using water. She also sold to five others and the supply when it reached plaintiff was about exhausted. The Court said: "If the capacity of the main was more than sufficient to furnish the parties who had obtained rights to connect with it an adequate supply, with sufficient force of flow, of water for use on their premises, Mrs. Dozier, as the owner of the pipes in the street, had the right as against such parties to sell to others the right to connect with the main and take water therefrom, so long as its exercise did not interfere with the prior rights acquired by others to a sufficient supply and force of flow of water from the main. Having this right, she could sell the pipes composing the main to any one she pleased; and her vendee could, to the same extent, subject to the same limitations, sell the right to connect with, and take water from the main. It is, however, hardly necessary to say that her vendee would have no right whatever to remove the pipes or do anything towards them that would in any way impair the rights acquired by others to their use as a media of obtaining a sufficient water supply upon their premises."

In Gould on Waters (3 ed.), part sec. 354, it is said: "The general rules relating to severance of tenements are that a grant by the owner of a tenement or part of that tenement, as it is then used and enjoyed, passes to the grantee by implication, and without the use of the word 'appurtenances' or similar words, all those easements which the grantor

can convey, which are necessary to the reasonable enjoyment of the granted property, and have been, and are, at the time of the grant, used by the owners of the entirety for the benefit of the granted tenement; and that, except in the case of ways or easements of necessity, there is no corresponding implication in favor of the grantor, who, if he wishes to reserve any right over the granted part, should reserve it expressly in the grant." And the same author, part section 356, speaking to the subject, says: "In *Nichols v. Chamberlain* (Cro. Jac., 121) it was held upon demurrer 'that if one erect a house, and build a conduit thereto in another part of his land, and convey water by pipes to the house, and afterwards sell the house with the appurtenances, excepting the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house; because it is necessary *et quasi* appendant thereto; and he shall have liberty by law to dig in the land for amending the pipes, or making them new, as the case may require.'" Washburn Easements and Servitudes (3 ed.), p. 76.

In *Spencer v. Kilmer,* 151 N. Y., 390, 398, *O'Brien, J.,* speaking to the question, says: "When the owner of a tract of land conveys a distinct part of it to another, he impliedly grants all these apparent and visible easements which at the time of the grant were in use by the owner for the benefit of that part so granted, and which are essential to a reasonable use and enjoyment of the estate conveyed. The rule is not limited to continuous easements or to cases where the use is absolutely necessary to the enjoyment of the thing granted. It applies to those artificial arrangements which openly exist at the time of the sale, and materially affect the value of the thing granted.'"

*Smith, C. J.,* in *Hair v. Downing,* 96 N. C., p. 175, said: "We are of the opinion that the servitude of the one to the other, existing when both belonged to one owner, remained when the severance was effected by the different conveyances. The easement passed with the legal estate in the tract to which it adhered, and in the like plight was the servient tenement conveyed to the plaintiff, whose rights, especially after full notice, cannot be superior to those of his grantor. 'Where one having two tenements, and a gutter from one of them ran over or across the other, sold one tenement to one and the other to another, it was held that the easement and servitude of the gutter passed with the respective estates by the form of the grant.' *Copes case,* Year Book II, Hen. VII, 25." *Bowling v. Burton,* 101 N. C., p. 176; *Lamb v. Lamb,* 177 N. C., 150; *Craft v. Lumber Co.,* 181 N. C., 29; *Meroney v. Cherokee Lodge,* 182 N. C., 739.

*Lord Mansfield,* in an early case (*Roberts v. Karr,* 1 Taunt, 495), observed: "If you (the lessor) have told me in your lease, this piece of land abuts on the road, you cannot be allowed to say that the land on which it abuts is not a road."

It is held in *Moose v. Carson,* 104 N. C., 434: "When by laying off streets, third parties have been induced to buy lots adjacent to them and build on the lots, by an individual grantor, the dedication to the public use has been held irrevocable, although the streets may not have been formally accepted by the authorities of a town in which they lie. *Grogan v. Town of Hayward,* 4 Fed. Rep., 161." *Green v. Miller,* 161 N. C., p. 30; *Sexton v. Elizabeth City,* 169 N. C., 385; *Draper v. Conner,* 187 N. C., 18; *Davis v. Robinson,* 189 N. C., 589; *Durham v. Wright,* 190 N. C., 568.

"Where the terms of a grant are general or indefinite, so that its construction is uncertain and ambiguous, the acts of the parties contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties. Ang. Water Courses, sec. 363, and cases cited in note 1, and among them *Jonnison v. Walker,* 11 *Gray,* 426; and *Woodcock v. Estey,* 43 Verm., 522." *Hair v. Downing, supra,* 176.

In *Brooklyn Life Ins. Co. of N. Y. v. Dutcher,* 95 U. S., 270 (24 L. Ed.), p. 412, it is said: "The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to. The probabilities are largely in the direction of the former. In considering the question before us, it is difficult to resist the cogency of this uniform practice during the period mentioned, as a factor in the case."

The defendants, Dowtins, had caused 18.6 acres of land near Asheville to be subdivided into 65 lots, one of these lots on the record and sales map used by the auctioneer showed that it was marked "reserved." The "reserved" lot had on it springs and *quasi*-water system; hydraulic ram that pumped water to lot 64. The auctioneer for the Dowtins at the public sale, in the presence of defendant, Presnell, who afterwards bought the "reserved" lot from the Dowtins, stated publicly at the time of the sale to the prospective purchasers, including plaintiffs, that the houses were being sold fully equipped with water supply, bath-rooms, and electric fixtures. The plaintiffs purchased lot 64 from the Dowtins at the public sale, containing four acres with two houses on the land. The houses were equipped with pipes, etc., the water being used in them at the time was pumped into the houses from the springs on the lot "reserved." The deed from the Dowtins gave the right to plaintiffs to use the water from the tract marked "reserved," so long as springs shall be kept in shape or until water could be secured

on the property from the city of Asheville or other source. There is nothing wrong with the springs and water could not be secured from Asheville or sufficient supply from other sources, for the use of plaintiffs on lot 64. The Asheville water supply was not more available than when the deed to plaintiffs was made. The only pure water obtainable was from the springs on the lot "reserved." The Dowtins' deed to plaintiffs conveyed the lands and premises *with all the appurtenances thereunto belonging or in anywise appertaining.* The deed from the Dowtins to their codefendant, Presnell, for the "reserved" lot, had a condition in it that the conveyance was made subject to the right of abutting property owners to obtain water at a spring on the property until water is available otherwise. The defendant, Presnell, bought from the Dowtins with full notice of the rights of plaintiffs. The deed to plaintiffs when he purchased was on record granting *them* the water rights and referring to the recorded map showing the lot marked "reserved." The *quasi*-water system Presnell could see was in operation pumping water to lot 64 on the day of the land sale, and he heard the auctioneer announce that the lot was sold fully equipped with water supply. Any ambiguity in the terms of the grant, cotemporaneous acts and conduct of the 'parties, can be shown to make clear the intent. Under all the facts and circumstances of this case, plaintiffs have, by grant duly recorded, acquired easement, to the extent contemplated, in the *quasi*-water system.

The acts and conduct of the parties lead to but one interpretation of the grant, under such circumstances: plaintiffs' *quasi*-water system cannot be disconnected from the springs or rendered unfit for use. It is a matter of common knowledge that land for residential purposes on a hill in a mountainous country is of little value for home purposes without water in easy reach. The lot with the houses on it was sold with the distinct representation by the auctioneer that plaintiffs should have the same, equipped with water supply and they were equipped at the time of the sale. The deed to plaintiffs, by language and implication, gives the right to the *quasi*-water system, and this construction is bourne out by the cotemporaneous acts and conduct of the parties. It is important in these land sales that the representations of the agents and auctioneers in the scope of their employment to innocent and confiding purchasers who rely on them and make contracts be fulfilled.

For the reasons given there is error in the judgment sustaining the motion of defendants for judgment as in case of nonsuit.

Reversed.