### J. S. WOODS v. CITY OF DURHAM.

(Filed 15 April, 1931.)

**Limitation of Actions A b—Right to recover for taking of land for street held barred by lapse of time under provision of city charter.**

A city charter which provides that a grant of land by the owner for street purposes will be presumed after two years from the date it has been taken for such purposes by the city will bar the owner's right of recovery when he has failed to bring action for damages until after the limitation so fixed, and in this case *Held:* the assurance of the city engineer that the city was not taking the land at the time of the commencement of the work does not make it inequitable for the city to plead its charter in bar, it appearing that the city had then actually taken the land and had continuously used the same for street purposes without objection for more than the period stated.

APPEAL by plaintiff from *Grady, J.,* at February Term, 1931, of DURHAM. Affirmed.

This is a civil action brought by plaintiff against defendant to recover the value of certain land alleged to have been taken by defendant for street and sidewalk purposes and, also, for other alleged damage.

Foster Street, in the city of Durham, was 56 feet wide until it reached plaintiff's property, and plaintiff alleges that defendant took the following described property to continue the 56 feet width of Foster Street, until it intersected with Trinity Avenue, at a dead end, viz.:

Beginning at a stake in what is now Foster Street 11.7 feet north 86 degrees west from the southwest intersection of the present property lines on Foster Street and Trinity Avenue, and running thence south 86 degrees east 11.7 feet to a stake; thence south 4 degrees west 160 feet to a stake in the line of A. M. Rigsbee estate; thence north 86 degrees 24 minutes west 7.1 feet to a stake; thence north 2 degrees 48 minutes east 160.2 feet to a stake, the beginning corner.

. The defendant denied liability and alleges that the plaintiff voluntarily and of his own free will and accord gave and permitted to be used for sidewalk purposes the said strip of land which he requested this defendant to grade, and which was so graded by this defendant at plaintiff's request in the year 1923.

Defendant alleges that by reason of plaintiff's act in requesting this defendant to grade said strip of land for sidewalk purposes in the year 1923, and having been so graded by this defendant for sidewalk purposes, that defendant is barred from any claim or right of claim for said strip of land given and used for sidewalk purposes, and pleads section 66 of the charter of the city of Durham as a complete bar to any claim by plaintiff for said strip or parcel of land, which said section 66 of the charter is as follows:

"That in the absence of any contracts with said city in relation to the lands used or occupied by it for the purpose of streets, sidewalks, alleys or other public works of said city, signed by the owner thereof or his agent, it shall be presumed that the said land has been granted to said city by the owner or owners thereof, and said city shall have good right and title thereto, and shall have, hold and enjoy the same. Unless the owner, or owners of said land, or those claiming under them shall make claim or demand for compensation within two (2) years next after said land was taken, he, or they, shall be forever barred from recovering said land, or having any compensation therefor; provided, nothing herein contained shall affect the rights of *feme coverts* or infants until two years after the removal of their respective disabilities."

The plaintiff, on cross-examination, testified in part as follows:

"I did not own the corner lot at that time. Nobody for the city told me they wanted the strip of land for a sidewalk, but they took it. I

wanted it graded off, so I could fix that wall, so it would not be causing me any more trouble and expense when they came along to make a permanent job of Foster Street.

"Mr. Kueffner told me, about 1922 or 1923, they were going to widen Foster Street. I was the first one to suggest widening the street and to take the dirt off then. I spoke to the man on the steam shovel. At that time they were only grading that part of Foster Street the city claimed belonged to it.

"I don't expect they would have graded the strip for the sidewalk in front of my place unless I had asked them to do it. The sidewalk is on the same grade with the sidewalk on Trinity Avenue. The sidewalk I asked them to fix on Foster Street is the same one that is there now. It is exactly the same as they fixed it in 1923.

"I have not exercised any control over that sidewalk since 1923. I have not claimed it at all. I have not done any building or anything there. I wish I had now, though, so you fellows would have taken it for granted and stopped me."

H. W. Kueffner, director of public works, witness for defendant city, testified in part:

"I had a conversation with Mr. Woods in 1923, in my office. Late in the spring, or early summer 1923, they were grading Foster Street, making an approach of Foster Street into Trinity Avenue. We were grading 32 feet of Foster Street. Mr. Woods, at the time the shovel was working, noticed that they were only grading the roadway, and he came and asked if we would not grade a strip along his property on Foster Street, for a sidewalk, and that he wanted to fix his property in line like it would always be, and that he did not want to be bothered again; and he would be glad so he could fix his property up in permanent shape.

"I told him if he wanted that graded that we would do it. I ordered it graded and the city paid the cost. I ordered the contractor to grade eight feet wider on that side. We were about three feet away from the property of Mr. Woods at that time. I was there when the work was done. I remember an umbrella tree there. We didn't take down any trees. I don't think Mr. Woods was there when we were grading. I told him we would stake out an eight-foot sidewalk and it would remain like that. It was in April or May. That was in the spring of 1923, at the time we were grading Trinity Avenue.

"We graded into Foster Street, in order to make a proper grade approach so the two streets would meet. We graded Mr. Woods' land for the sidewalk. Foster Street was improved in 1927 and 1928. The grade was not changed in front of Mr. Woods' property. We graded a sidewalk at the request of Mr. Woods. It has been used by anybody

who wanted to use it as a public sidewalk. It has been recognized as a city street and sidewalk since 1923, that is, the part next to the retaining wall. As director of public works, I superintended it for the purpose of keeping it open and clear, and it has been under the custody and control of the city since 1923."

Defendant offered in evidence section 66 of the city charter, as set out in the answer.

This action was commenced 14 August, 1929.

At the close of plaintiff's evidence and at the close of all the evidence, the defendant made motions for judgment as in case of nonsuit. C. S., 567. The court below allowed the motion at the close of all the evidence. The plaintiff excepted, assigned error and appealed to the Supreme Court. The other necessary facts will be set forth in the opinion.

*Brawley & Gantt for plaintiff.*
*S. C. Chambers for defendant.*

CLARKSON, J. We think the court below correct in allowing defendant's motion as in case of nonsuit at the close of all the evidence. We think the charter of the city of Durham, section 66, in relation to the defense of the statute of limitation properly set up in the answer and offered by the defendant in evidence. The plaintiff relies on what he alleges that the city engineer told him.

"He said: 'Yes, Woods, I will do that. I will send a man tomorrow and have the grade fixed and the line set back as far as it will be necessary to take when they made a permanent job, but mind you, we are not taking any land now.' "

But the answer to this is that defendant in 1923 did cut the bank down at its own expense and graded the street and actually took the land, and it has been used by the public until 1929, when this suit was instituted. Plaintiff put up a cement retaining wall, 4 to 6 feet high, which, including the steps, was 72 feet long—and this was done leaving the land in controversy a part of the street, occupied by the city and used by the public.

By the court:

"You mean the line of the strip—between the strip and what was left of your land?"

Answer: "Yes, sir. I built it on what is known now as the land that belongs to me outside of what they taken."

The plaintiff testified:

"Nobody for the city told me they wanted the strip of land for a sidewalk, but they took it. . . . I have not exercised any control over that sidewalk since 1923. I have not claimed it at all."

Since 1923 the land taken has been kept open and clear and used by the public as a street and sidewalk, and has been under the custody and control of the city ever since.

We do not think the expression made by the city engineer and what he testified to, in regard to this matter, under the facts and circumstances of this case, is such evidence as appeared in . *Gaddis v. Road Commission,* 195 N. C., 107, and cases therein cited, in which it was held inequitable to plead the statute of limitations. The two-year statute of limitations provided in the charter started to run, in the language of the statute, "after said land was taken."

The conduct and acts of plaintiff; the city cutting down the embankment and widening the street at its expense; the plaintiff putting up the retaining wall on his property at his expense, in line with the street, widened with his permission; the land taken by the city and adverse use by the public from 1923 until this suit was instituted in 1929, are such that under the facts and circumstances of this case, the two-year statute under defendant's charter, which was pleaded, commenced to run in 1923, when the land was taken, and is sufficient to bar plaintiff from recovery in this action. *Tise v. Whitaker,* 146 N. C., 374; *City of Durham v. Wright,* 190 N. C., 568. The judgment of the court below is
    Affirmed.