IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-446

No. COA21-552

Filed 5 July 2022

Moore County, No. 19 CVS 806

COUNTY OF MOORE, Plaintiff,

v.

RANDY ACRES and SOEK YIE PHAN, Defendants.

Appeal by plaintiff from order entered 14 May 2021 by Judge Michael A. Stone in Moore County Superior Court. Heard in the Court of Appeals 22 February 2022.

*Womble Bond Dickinson (US) LLP, by H. Stephen Robinson and Mary Craven Adams, and Moore County, by Misty Randall Leland, for Plaintiff-Appellant.*

*McGuireWoods LLP, by Robert Muckenfuss and R. Locke Beatty, for Defendants-Appellees.*

INMAN, Judge.

¶ 1        Plaintiff County of Moore ("the County") appeals the trial court's summary judgment order dismissing its complaint seeking declaratory and injunctive relief requiring Defendants Randy Acres and Soek Yie Phan ("Defendants") to remove an alleged "spite fence" erected along their rear property line. The complaint alleges Defendants built the new fence and planted invasive holly trees that restrict access to the public underground water and sewer infrastructure operated by the County.

¶ 2        The trial court entered summary judgment in favor of Defendants and

dismissed the County's complaint on the ground that the County had not shown it holds title to the water and sewer pipes or a utility easement. The County appeals. For the reasons explained below, we reverse and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The record tends to show the following:

The Village of Pinehurst ("Pinehurst") was built at the turn of the 20th century. The founding developers installed water and sewer lines to provide services to the residents. The County took ownership of the water and sewer system in 1999 and has provided service to the residents of Pinehurst through that same system ever since.[1]

Among the mains within the County's infrastructure are a cast iron water line and a clay sewer line that run along the rear of Defendants' property located on Palmetto Road in Pinehurst (the "Property"). The water main provides fire-fighting service to the Property and surrounding parcels and further functions to prevent stagnation and offers a redundancy in the event another water line is out of service. The sewer line services only the Property.

---

[1] The record discloses the water and sewer system came under the ownership and operation of the Pinehurst Water and Sanitary Company, Inc. by the 1900s. Roughly a century later, in 1993, Pinehurst Water and Sanitary Company deeded the system to Moore Water and Sewer Authority ("MOWASA"), a regional public water and sewer authority created pursuant to statute. *See* N.C. Gen. Stat. §§ 162A-3, *et seq.* (2021). In 1999, MOWASA ceased operation and deeded the water and sewer system to the County.

¶ 6 The utility mains were installed on the Property prior to when Defendants' home was built; however, the record contains conflicting evidence as to exactly when the lines were installed and by whom. A 1956 map found in the County's archives shows the sewer main dated to 1900. A fire plug installed on the water main is imprinted with the year 1914. Neither of the lines, nor any recorded easement for either of them, appears in the chain of title to the Property.

¶ 7 When Defendants purchased the Property in 2004, an existing fence and foliage were located several feet inside their property line. In 2012, the County contacted Defendants to schedule maintenance on the sewer and water lines, which would require removing and replacing a portion of that fence. Defendants expressly permitted the contractor to do so, and the County serviced the lines.[2]

¶ 8 In 2018, Defendants' neighboring property owners constructed an addition to their home that resulted in a dispute among those neighbors and Defendants. On 28 October 2018, Defendants applied to Pinehurst for a permit to construct a new fence extending closer to their property line. Pinehurst responded by advising Defendants

---

[2] Mr. Gould, the County Public Works Director, testified in deposition that the contractor sought permission from Defendants rather than claim an easement because the repair was part of scheduled maintenance and not an emergency that required immediate rehabilitation. Mr. Gould further testified that the County does not and would not seek permission from a landowner in the event of an emergency that required immediate repair, relying instead on its easement rights to effectuate any repair without pursuing or receiving prior authorization from the landowner.

that they "must contact Moore County Public Works . . . to determine water line placement and recommended location of fencing." Defendants never contacted Moore County about the location of the fence. They called a local 811 service for public utility markings. Defendants then dug installation holes for the new fence, exposing but not rupturing the underground mains.

¶ 9        On 18 March 2019, after learning of Defendants' installation and exposure of the utility lines, Pinehurst notified the Engineering Division of Moore County Public Works. Moore County staff visited the site the same day and attempted to order them to stop the work. The next day, the County sent Defendants an e-mail stating the fence was required to be installed outside the Moore County easement.

¶ 10        Defendants allegedly did not respond to the County's e-mail and constructed the new fence the following month, running above the utility mains operated by the County and blocking their neighbors' access to their new garage. The County alleges the new fence blocks public access to a gravel alleyway that neighbors and community members have used for decades. The County also alleges Defendants' new fence closes in "the water main, sewer main and manhole, thus preventing adequate access to the utilities . . . ."

¶ 11      The following map, included for illustrative purposes only,[3] shows the

approximate location of Defendants' new fence:



---

[3] This map should not be considered evidentiary or determinative of any fact at issue between the parties and is simply included to aid the reader in visualizing the physical improvements at the center of this dispute.

¶ 12        On 24 May 2019, the County sent Defendants two letters demanding the fence be removed within 14 days. Defendants did not remove the fence and, several weeks later, allegedly planted holly trees "all along the inside of the fence directly above the water main . . . ."

¶ 13        On 25 June 2019, the County initiated this action by filing a complaint in Moore County Superior Court. On 2 August 2021, the County filed an Amended Complaint seeking preliminary and permanent injunctive relief. The County further sought a declaration that it "enjoys the rights of ownership, pursuant to its power of eminent domain, of the manhole, water and sewer mains and the easements, measuring 10 feet on each side of the water main and sewer main . . . ."

¶ 14        The matter was removed to and subsequently remanded from the United States District Court for the Middle District of North Carolina. On 5 April 2021, Defendants moved for summary judgment. The County filed a cross-motion for partial summary judgment on the issue of the County's ownership of the lines and easement, leaving the size and scope of any such easement for determination at trial.

¶ 15        The parties' motions for summary judgment came on for hearing on 29 April 2021, with the trial court noting that "there's no evidence even in the record that Moore County even owns the pipe." Following the hearing, the trial court entered summary judgment in favor of Defendants and dismissed the County's claims for injunctive and declaratory relief. The County appeals.

## II.  ANALYSIS

The record evidence reveals Defendant Randy Acres purchased the Property in late 2004 with the abutting gravel throughway and water and sewer mains already constructed and in operation.[4]  The trial court nevertheless agreed with Defendants that the County failed to show it took title to a utility easement and therefore could not restrict Defendants' use of the Property.  We conclude the trial court erred and reverse the summary judgment order.

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021).  "The party who moves for summary judgment bears the burden of establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985).  In reviewing the evidence anew and in the light most favorable to the nonmoving party, the court must ultimately determine "whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Griggs v. Shamrock Bldg. Servs., Inc.*, 179 N.C. App. 543, 546, 634

---

[4] A non-warranty deed was made on 1 September 2015 by and between Randy Acres and his spouse Soek Yie Phan.

S.E.2d 635, 637 (2006) (citation omitted). "The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim . . . ." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

¶ 18        A trial court's order on summary judgment is reviewed *de novo. Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 673, 748 S.E.2d 154, 157 (2013). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).

**B. County's Power to Exercise Eminent Domain**

¶ 19        "Private property can be taken by the exercise of the power of eminent domain only where the taking is for a public use." *Highway Comm. v. Equipment Co.*, 281 N.C. 459, 468, 189 S.E.2d 272, 278 (1972) (citation omitted). North Carolina General Statutes Chapter 40A, Article I, Section 3 authorizes counties to exercise the power of eminent domain for the construction of public water supplies and public sewage systems. N.C. Gen. Stat. § 40A-3(b)(4) (2021). "When land is appropriated under this power of eminent domain . . . , the [county] acquires an easement . . . in the land so taken, and the fee to the property remains in the landowner, who may subject the land to any use which is not inconsistent with its use for the purpose for which it is

taken." *Proctor v. Highway Commission*, 230 N.C. 687, 691, 55 S.E.2d 479, 481 (1949).

¶ 20 A "taking" for purposes of the power of eminent domain occurs upon "entering upon private property for more than a momentary period, and, under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to . . . deprive [the owner] of all beneficial enjoyment thereof." *Penn v. Coastal Corp.,* 231 N.C. 481, 484, 57 S.E.2d 817, 819 (1950) (citation omitted); *see also City of Charlotte v. Combs*, 216 N.C. App. 258, 261, 719 S.E.2d 59, 62 (2011).

> Moreover, what is a taking of property within the due process clause of the Federal and State constitutions, . . . is not always clear, but so far as general rules are permissible of declaration on the subject, it may be said that there is a taking when the act involves an actual interference with, or disturbance of property rights, resulting in injuries which are not merely consequential or incidental.

*Penn,* 231 N.C. at 484-85, 57 S.E.2d at 819-20 (citation and quotation marks omitted); *see also Town of Apex v. Whitehurst*, 213 N.C. App. 579, 584, 712 S.E.2d 898, 902 (2011).

¶ 21 Black's Law Dictionary defines a "taking" as "[t]he government's actual or effective acquisition of private property . . . by . . . severely impairing its utility." *Taking*, Black's Law Dictionary (11th ed. 2019). "There is a taking of property when government action directly interferes with or substantially disturbs the owner's use

and enjoyment of the property." *Id.* An entity with the power of eminent domain that takes possession of pre-existing infrastructure on private property always holds title to that portion taken and is never a trespasser. *Cf. Durham v. Wright*, 190 N.C. 568, 571-572, 130 S.E. 161, 163 (1925) ("[I]n the absence of any contract or contracts with [the] city in relation to the lands used or occupied by it for the purpose of . . . public works . . . , it shall be presumed that the said land has been granted to said city by the owner or owners thereof, and [the] city shall have good right and title thereto . . . ." (citation omitted)).

¶ 22     When the government takes private property for public use, just compensation must be paid. *Fisher v. Town of Nags Head*, 220 N.C. App. 478, 481, 725 S.E.2d 99, 103 (2012) (citation and quotation marks omitted). In the event a governing body effectuates a taking without first initiating a formal condemnation proceeding, an aggrieved property owner's only means of obtaining just compensation is through an action in inverse condemnation. N.C. Gen. Stat. § 40A-51(a) (2021). Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Town of Apex v. Rubin*, 277 N.C. App. 328, 2021-NCCOA-187, ¶ 18 (emphasis omitted) (quoting *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 552, 809 S.E.2d 853, 861 (2018)).

¶ 23        Inverse condemnation is an aggrieved landowner's sole remedy for a

government taking regardless of whether the government initiated the taking by a

condemnation action. *McAdoo v. City of Greensboro*, 91 N.C. App. 570, 573, 372

S.E.2d 742, 744 (1988) ("Summary judgment for defendant was appropriate not

because of the statute of limitations but because defendant as a city had the power of

eminent domain, and such power insulates it from trespass actions regardless of

whether compensation was paid or proper procedures were used. The exclusive

remedy for failure to compensate for a 'taking' is inverse condemnation under G.S.

40A-51.").

> Once the cause of action has occurred by the infliction of
> damage to the property, the taking is a *fait accompli*. This
> is true because the government *had the authority to invade
> the property rights of the landowner and to appropriate
> them to public use in the first instance*, and the owner had
> no right to abate the nuisance. *His only remedy is a single
> action for permanent damage to his property by reason of
> the taking*. The government has an easement to continue
> the obstruction permanently, and whether it will continue
> to maintain the obstruction, alter it, or remove it altogether
> is optional with the government.

*Midgett v. N.C. State Highway Comm'n*, 260 N.C. 241, 249, 132 S.E.2d 599, 607

(1963), *overruled in part on other grounds by Lea Co. v. North Carolina Bd. of Transp.*,

308 N.C. 603, 304 S.E.2d 164 (1983) (emphases added).

¶ 24        Section 40A-51(a) imposes a two-year limitations period for bringing an inverse

condemnation action, running from the date of the alleged taking or the completion

of construction of the taking, whichever is later. N.C. Gen. Stat. § 40A-51(a). Our Courts have likewise held that unless landowners "shall, at the time of the occupation of the said land, . . . apply for an assessment of said land, as provided . . . , within two years next after said land was taken, . . . they shall be forever barred from recovering said land, or having any assessment or compensation therefor[.]" *Wright*, 190 N.C. at 572, 130 S.E. at 163.

¶ 25    Here, the record shows the utility mains were installed along Defendants' Property more than a century ago and that the County began operating them more than two decades ago. Most recently, the County exercised its easement rights in 2012, when Defendants permitted the County to access the sewer and water lines for maintenance, which required the County to temporarily remove Defendants' original fence. By any of these measures, the time for Defendants to file an inverse condemnation action has expired.

¶ 26    This Court has previously decided a case determining the County's condemnation interest in the same sewer infrastructure at issue in this case. In *Central Carolina Developers, Inc. v. Moore Water & Sewer Auth.*, 148 N.C. App. 564, 559 S.E.2d 230 (2001), the County was using a pipe without any direct condemnation action having been filed or the recording of an easement on the property. *Id.* at 565-67, 559 S.E.2d at 231-32. A developer, who purchased the lot but was unable to build on it in 1998 due to the presence of the pipe, filed suit against its predecessor in

interest and the County for trespass or alternatively inverse condemnation. *Id.* at 565, 559 S.E.2d at 231. The predecessor moved to dismiss the complaint on the theory that the taking occurred when the pipe was installed prior to 1989, so the plaintiff's 1998 lawsuit was barred by the two-year limitations period for inverse condemnation. *Id.* at 565-66, 559 S.E.2d at 231. The trial court dismissed the plaintiff's complaint and this Court affirmed, holding the taking of the utility easement occurred sometime prior to 1989, when the sewer line was installed. *Id.* at 566-67, 559 S.E.2d at 231-32. The developer's suit, filed at least seven years after the limitations period had run, was therefore untimely. *Id.* at 567, 559 S.E.2d at 232.

¶ 27      Applicable case law supports the County's contention that it acquired title by taking the lines and utility easement when its predecessor in interest deeded the system to the County and the County began operating it in 1999.[5] *See Huntley v. Potter*, 255 N.C. 619, 631, 122 S.E.2d 681, 689 (1961) (holding a taking of sewer and water lines requiring compensation occurs when "the municipality . . . appropriates

---

[5] Defendants' contention that the County waived this argument is contrary to the record before us. The County's complaint specifically requested a judgment:

> declaring that the County enjoys the rights of ownership, pursuant to its power of eminent domain, of the manhole, water and sewer mains and the easements. . . . [and] that the exclusive remedy of Defendants to any claims for compensation for the taking . . . is an action in inverse condemnation, which is time-barred[.]

The County argued the same in its brief submitted to the trial court.

them and controls them as proprietor"); *Styers v. Gastonia*, 252 N.C. 572, 574, 114 S.E.2d 348, 350 (1960) (holding water lines installed by a developer were taken when they were incorporated into a city water system and "the city appropriated plaintiffs' property to its own use"); *Jackson v. City of Gastonia*, 246 N.C. 404, 408, 98 S.E.2d 444, 447 (1957) (taking of sewer and water line occurs when "the city has taken over, used and controlled said lines as if installed by it originally" (quotation marks omitted)); *Central Carolina Developers, Inc.*, 148 N.C. App. at 567, 559 S.E.2d at 232 ("Therefore, any 'taking' would have occurred when the sewer pipe was installed across Lot 253.").

¶ 28        Defendants contend the existence of a city sewer line on private property does not confer an easement, citing *Juhan v. Cozart*, 102 N.C. App. 666, 403 S.E.2d 589 (1991). In *Juhan*, the defendants sold a home to the plaintiffs with a warranty against encumbrances, not realizing an unplatted sewer line ran beneath the house. *Id.* at 668-69, 403 S.E.2d at 590-91. This Court affirmed the trial court's order dismissing the plaintiffs' complaint, reasoning that the sewer line was not, by itself, evidence of an easement encumbering the property. *Id.* at 672, 403 S.E.2d at 592-93. The holding in *Juhan* was limited in that the parties presented no evidence concerning whether the Town of Fuquay-Varina used the pipes or claimed any interest in an easement over the land. *Id.* at 670, 403 S.E.2d at 591.

¶ 29        The record here unequivocally reveals the County has continuously used and

operated the lines on the Property for a public purpose since 1999, and the County asserts it maintains ownership of the lines and an attendant easement. *Juhan's* limited holding is thus inapposite. To the contrary, the taking of the lines beneath the Property has necessarily vested in the County title to an easement along the surface of the Property to service, maintain, and repair the lines. *See Central Carolina Developers, Inc.*, 148 N.C. App. at 567-68, 559 S.E.2d at 232; *Sanitary District v. Canoy*, 252 N.C. 749, 752, 114 S.E.2d 577, 580 (1960) ("[R]espondents retained the fee and have a right to use the property so long as such use does not interfere with the proper use by the petitioner for the maintenance and operation of its sewer lines.").

¶ 30        So, even in the absence of a recorded deed, as a matter of law the County holds title to the utility mains under the Property, which includes title to the easement for their maintenance and repair. We conclude the County has established it holds title to the lines and easement at issue and that the trial court erred in awarding summary judgment to Defendants.

¶ 31        The County sought from the trial court partial summary judgment on the issue of the easement and asked "to have a trial as to the reasonable commercial use and enjoyment to establish the width of the easement." The necessary scope of the easement, having been reserved for trial, is therefore not before us.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of Defendants and remand the matter for: (1) entry of a partial summary judgment order declaring the County owns title to the lines and easement extending along Defendants' property; and (2) a proceeding on the size and scope of the easement and any remaining issues raised by the pleadings.

REVERSED AND REMANDED.

Judges ARROWOOD and JACKSON concur.