WILLIAM FARR ET AL. v. CITY OF ASHEVILLE.

(Filed 12 July, 1933.)

**Municipal Corporations F d—Evidence held insufficient to show appropriation by city of water mains installed by plaintiff.**

Evidence that the owner of a subdivision outside the corporate limits of a city constructed water mains therein, and for his own convenience and profit connected them with the city's water system, and that the city furnished water through such mains to the residents of the development, collecting water rentals from the residents, and that thereafter the corporate limits of the city were extended to include the development, and that the city continued to furnish water to the residents of the development in the same manner as before the extension and without any assertion of ownership of the mains installed by plaintiff, *is held* insufficient to show a taking or appropriation of the plaintiff's mains, and the city's motion as of nonsuit in the owner's action to recover the value of such mains should have been allowed, and the fact that the city repaired a leak in such mains and flushed them at a dead-end does not alter this result, such acts being incidental to the furnishing of water, nor does the connection of water lines outside the development with such mains after the extension of the city limits constitute an appropriation of plaintiff's property by the city.

CIVIL ACTION, before *Clement, J.,* at October Term, 1932, of BUNCOMBE.

The plaintiffs instituted this action against the defendant alleging that they bought a certain block of property outside the corporate limits of Asheville, and "that during the latter part of 1923 and the first part of 1924 the plaintiffs, being desirous of developing said tract of land into residential property, had the same surveyed and platted into lots, streets, alleys and sidewalks, and proceeded to develop the same and to build upon said property improved, hard-surfaced streets, alleys and sidewalks, and built and constructed a water and sewer system . . . in accordance with the ordinances of the city of Asheville." It was further alleged that pursuant to chapter 205, Private Laws of 1929, the corporate limits of the city of Asheville were extended "so as to include the aforesaid development made by these plaintiffs, and the city of Asheville did on or about 30 June, 1929, in pursuance of the authority of said act, take charge and control of said sewer and water systems, and made same a part of the said water and sewer systems of the city of Asheville, . . . using the same for its own uses and purposes, and that by such taking and using the defendant, by virtue of the implied promise and agreement to pay plaintiffs for said water and sewer mains, became indebted to the plaintiffs in the amount of the value thereof." Plaintiffs further alleged that they had installed

a water system in said development at a cost of $2,405.72 and prayed that they recover from the city the value of said water system.

The evidence tended to show that the block of land owned by the plaintiffs lay between Merrimon and Westall avenues. The plaintiffs opened up a street running east and west from Merrimon Avenue to Westall Avenue and named this street Farrwood Avenue. Streets were also opened entering Farrwood Avenue and designated as Vineyard Place and Garden Terrace. The subdivision contained forty-one lots and all of the lots had been sold.

The city maintained a water line on Merrimon Avenue, and the plaintiff connected his water system with the line on said Avenue and constructed a line along Farrwood Avenue eastwardly to Kimberly Avenue, which was about four hundred feet beyond the boundaries of plaintiffs' subdivision. The Kimberly Avenue property was owned by Dr. Grove, and the city was furnishing water to the Grove property. The pipes were laid in 1923 and 1924. Hydrants and water connection were installed so as to furnish water to each lot in the Farrwood subdivision. The system was not installed under the supervision or superintendence of any city inspector. Plaintiff Farr said: "The city was furnishing water through the lines prior to 1929 and at that time the property was out of the city. I never made any claim of any kind up to 1929 or until after the Stephens' suit in Charlotte. Prior to 30 June, 1929, when the city limits were extended, the water rate outside the city limits was twice as large as that within said limits." The superintendent of the water department in the city of Asheville, a witness for plaintiffs, said: "The city furnished water in 1923 and in 1924 over these same lines and collected water rents. There has been no change in the method of handling it since then; it was handled in 1929 just as it was done prior to 1929." A former plumbing inspector of the city of Asheville, witness for plaintiffs, said: "He was employed by the city of Asheville from 15 December, 1900, to 31 July, 1931. . . . My duty was to maintain the water and sewer systems of the city and install such lines as were ordered by the commissioners. I am familiar with the Farrwood development. During my employment I remedied a leak on Farrwood near Vineyard. I flushed the hydrant on Vineyard frequently, the dead-end, because one of the houses is quite close to the dead-end. I extended the Virginia Avenue water line and connected it to Farrwood, after the city extension. . . . The leak was repaired several years ago. Virginia Avenue is in Norwood Park. The connection was made on Farrwood Avenue, east of Westall Avenue. Farrwood Avenue goes beyond Westall Avenue east into Kimberly. . . . The only connection I made was on Farrwood, east of Westall, about two hundred or two hundred and fifty feet from Kimberly." There was

further testimony to the effect that "the lots were appraised during the development at a price which included the value of the improvement. The lots would not have been worth nearly as much had they not been improved." There was also evidence tending to show that the water system was reasonably worth the amount paid by the plaintiff in constructing the same.

The following issues were submitted to the jury:

1. "Did the plaintiffs install and pay for the water mains located in said development, and were they the owners of the same on 30 June, 1929, as alleged in the complaint?"

2. "Did the defendant on and after 30 June, 1929, wrongfully take possession of said water main and appropriate the same to its own use?"

3. "What was the just and reasonable value of said water mains on 30 June, 1929?"

4. "Is the defendant indebted to the plaintiff by reason of the taking of the said water mains, and, if so, in what amount?"

The jury answered the first issue "Yes," the second issue "Yes," the third issue "$1,400," and the fourth issue "$1,400."

From judgment upon the verdict defendant appealed.

*John H. Cathey and Ford, Coxe & Carter for plaintiffs.*
*J. G. Merrimon for defendant.*

BROGDEN, J. Was there evidence that the defendant did "on and after 30 June, 1929, wrongfully take possession of said water main and appropriate the same to its own use?"

The facts relied upon by the plaintiff to show wrongful taking and appropriation are as follows:

(a) The extension of the limits of the city of Asheville in June, 1929, thus incorporating the water system into the general system of the city.

(b) The repairing of a leak on Farrwood Avenue near Vineyard Street.

(c) The flushing of a hydrant at a dead-end on Vineyard Street by the city plumber.

(d) The extension of the Virginia Avenue water line and connection thereof to the Farrwood line after city extension.

Manifestly, the bare extension of the city limits did not amount to a wrongful taking or appropriation of plaintiffs' property. The city owned a water line on the western boundary of the development, and also another line on Kimberly Avenue, which is east of the Farrwood development. The Farrwood construction was made in 1923 or 1924, and the city began furnishing water through the pipes claimed by the

plaintiffs and collected water rentals from users within the area. The repairing of a leak and the flushing of a dead-end was incident to furnishing water. Indeed a witness for plaintiffs said that there has been no change in the method of furnishing water since the installation of the system. "It was handled in 1929 just as it was done prior to 1929." Neither does the fact that a connection was made to the Farrwood Avenue line outside the development constitute a wrongful appropriation of plaintiffs' property. In the last analysis the plaintiff built a private water system, and for his own convenience and profit, connected it with the city system on the east and west of his development. The city immediately began to furnish water to residents in the subdivision on the completion of the system and has continued to do so up to the time the suit was brought on 3 February, 1932, without any change in its methods and without any assertion of ownership of the water pipes laid by the plaintiffs. Consequently, the court is of the opinion that there was no evidence of a wrongful taking or appropriation of plaintiffs' property within the definition of such terms. *Caveness v. R. R.,* 172 N. C., 305, 90 S. E., 244; *Powell v. R. R.,* 178 N. C., 243, 100 S. E., 424. Therefore, the motion for nonsuit should have been allowed.

Reversed.