H. W. SPAUGH and His Wife, EMMA C. SPAUGH, v. CITY OF
WINSTON-SALEM.

(Filed 1 February, 1952.)

**1. Municipal Corporations § 36—**

Knowledge of a municipal ordinance relating to water and sewer systems
is presumed within one mile of its corporate limits.   G.S. 160-203.

**2. Municipal Corporations § 15a—**

The rights of owners of water and sewer systems in a subdivision to
compensation upon the taking over of the systems consequent to the annex-
ation of the territory by a municipality must be determined in accordance
with the facts of each particular case.

**3. Same—Under the facts of this case, owners of subdivision held not en-
titled to compensation for water and sewer systems taken over by city.**

Owners of a real estate development within one mile of the limits of a
city constructed water and sewer systems therein.   To promote the sale
of lots, the systems were connected with the municipal systems, with the
consent of the city, and the city collected for water furnished through the
pipes to residents of the subdivision under its general ordinances.   At the
time the connections were made, a municipal ordinance was in force which
provided that water and sewer systems and rights and easements pertain-
ing thereto should become the property of the city whenever the territory
was incorporated by the city.   Upon annexation of the subdivision, the city
assumed exclusive control of the water and sewer systems and continued
to furnish water and sewer service to the residents in the same manner as
it had done during the preceding twenty years.   *Held:* The owners of the
subdivision are not entitled to compensation for the water and sewer lines,
and the city did not wrongfully deprive them of property rights therein by
the incorporation of the water and sewer systems into the municipal sys-
tems.   14th Amendment Constitution U. S.; Art. I, sec. 17, Constitution of
N. C.

Barnhill, J., concurring.

Appeal by plaintiffs from *Pless, J.*, September Term, 1951, of For-
syth.   No error.

This was an action to recover of the defendant city the value of a
water and sewer system installed by plaintiffs in a suburban real estate
development which was subsequently taken over by the city in the ex-
tension of its corporate limits.

The plaintiffs, the owners of land outside the corporate limits of
Winston-Salem and within a mile thereof, subdivided the property into
lots, laid out streets and sidewalks, registered a plat thereof, and installed
in and through the subdivision a water and sewer system for the service
and benefit of those who purchased lots.   The subdivision was named
Konnoak Hills.   Many lots have been sold and numerous residences have

been built thereon. By agreement with the owners of a subdivision known as Anderleigh lying between their subdivision and the southern limits of the city, the plaintiffs, with permission of the city, made physical connection with the water and sewer mains of the city in 1928.

January 1, 1949, the subdivision developed by plaintiffs and other populous suburban areas were annexed to and incorporated within the limits of the city, whereupon the city assumed exclusive control of the water and sewer system in Konnoak Hills and has continued to use and operate it in connection with the municipal water and sewer system. It was alleged in the complaint that the city had thus taken possession of property belonging to the plaintiffs and appropriated the same to its own use without compensating plaintiffs therefor, and that the reasonable value of the water and sewer system at the time it was taken over by the city was $52,000.

That the city, upon the extension of its corporate limits had assumed exclusive control of the water and sewer system which had been installed by the plaintiffs was not controverted, but the defendant set up as a defense and in denial of plaintiffs' right to recover that it was acting in accordance with secs. 218, 219, 220 and 730 of the Ordinances of the City of Winston-Salem; that in 1928 E. L. Anderson and wife entered into contract with the city under which the water and sewer lines in Anderleigh were connected with the sewer and water system of the city; that shortly thereafter plaintiffs secured permission to connect the water and sewer lines in Konnoak Hills with those in Anderleigh in order to provide purchasers of lots with these facilities, for the convenience and profit of plaintiffs and to promote the sale of plaintiffs' lots, and that plaintiffs thereby dedicated the water and sewer lines in Konnoak Hills to the use of the lot owners in that development; that the city thereafter furnished water and sewer service to the residents of Konnoak Hills, and since the city limits were extended has continued to furnish these facilities in the same manner to residents and lot owners in this subdivision. The defendant alleges that the plaintiffs have been fully compensated for the cost of installing these facilities by the sale of lots; that plaintiffs have dedicated the water and sewer lines to lot owners and prospective owners in the subdivision and have no property rights therein, and hence no property rights belonging to plaintiffs have been appropriated; and further the plaintiffs having connected their development with the city mains with knowledge of the provisions of the ordinances of the city that the water and sewer system and rights and easements pertaining thereto should become the property of the city whenever the territory was incorporated with the city limits, are now estopped to claim compensation therefor. The defendant admitted it has used and controlled said water and sewer system to the same extent as if it had been installed by it

originally, whereas prior thereto the defendant had recognized said lines as being the property of the plaintiffs.

The ordinances of the city which were introduced in evidence prescribe the method and requirement necessary for those outside the corporate limits of the city to obtain connection with the water and sewer system of the city, and contain this provision: "That the water system (of applicant) together with the fixtures, equipment, easements, rights and privileges pertaining thereto shall become the property of the city of Winston-Salem whenever the territory in which said system is located shall be incorporated within the city limits." Sec. 220. The same language was used with reference to sewer systems of owners of property outside the corporate limits who desire to connect with the city sewer system. Sec. 730.

Upon the pleadings and the stipulations entered into as result of pre-trial conference, the cause was submitted to the jury under peremptory instructions from the court to answer "No" to the following issue: "Did the defendant, on and after January 1, 1949, wrongfully take possession of said sewer and water system and appropriate same to its own use?"

It was stipulated that this issue presented a matter of law to be answered under the peremptory instructions of the court, and that the word "wrongfully" in the issue referred to the failure of the city to pay just compensation therefor.

Judgment was rendered upon the verdict that plaintiffs recover nothing, and plaintiffs appealed.

*Ralph M. Stockton, Jr., H. M. Ratcliff, John J. Ingle, and Richmond Rucker for plaintiffs, appellants.*
*Womble, Carlyle, Martin & Sandridge for defendant, appellee.*

DEVIN, C. J. The plaintiffs claim compensation for the appropriation by the city of Winston-Salem of the water and sewer lines installed by them in the real estate development known as Konnoak Hills, consequent upon the extension of the corporate limits of the city to include the territory in which this development is situated. They base their claim upon the broad principle that the city having taken exclusive control of their property and denied compensation therefor, they have thus been deprived of property without due process of law in violation of rights assured them by the Constitution of the United States and the Constitution of North Carolina. 14th Amendment Const. U. S.; Art. I, sec. 17 Constitution of North Carolina. They rest their case on the sound principle that private property may not be taken even for a public use without compensation. *McKinney v. Deneen,* 231 N.C. 540, 58 S.E. 2d 107.

The facts in the main are not controverted. No issue of fact is raised. The case was decided below on an issue of law, and the question presented

by the appeal is whether the facts as they appear of record are sufficient to show a violation of plaintiffs' rights in the appropriation of their property as claimed for which the city should be held liable for compensation.

The plaintiffs present the view that their claim for compensation is supported by the decisions of this Court in *Abbott Realty Co. v. Charlotte,* 198 N.C. 564, 152 S.E. 686; *Stephens Co. v. Charlotte,* 201 N.C. 258, 159 S.E. 414, and *Construction Co. v. Charlotte,* 208 N.C. 309, 180 S.E. 573. The first of these cases, *Abbott Realty Co. v. Charlotte,* was decided in 1930. It appeared in that case that the Realty Co. owned lots within the corporate limits of Charlotte on streets to which sewer lines had not been extended. To enhance sale of these lots plaintiff proposed to the Commissioner of Public Works that it would construct the sewer lines if the city would reimburse plaintiff for the cost. This proposition was accepted by the Commissioner. Relying upon this agreement, plaintiff constructed the sewer lines and connected them with the municipal sewerage system at a cost of $16,000. The city paid a portion, but declined to pay the remainder. Plaintiff sued on the contract. The Court held the contract unenforceable but that plaintiff could proceed upon a *quantum meruit.* The Court in so deciding used this language: "Notwithstanding the failure of plaintiff to sustain its contention that defendant is liable to it on the contract alleged in the complaint, the defendant should be and is liable for the reasonable and just value of the sewers, if the jury shall find that after their construction, defendant took them over and incorporated them into its municipal sewerage system."

It is obvious that the facts in that case differ in material respects from those in the case at bar. The decision seems to have been based upon the view that services of value had been rendered and accepted by the city in reliance upon an unenforceable contract.

In *Stephens Co. v. Charlotte, supra,* plaintiff laid out a residential suburban development known as Myers Park, with paved streets and water and sewer lines, outside the corporate limits of the city. In 1916 the city permitted plaintiff to make connection with city mains. In 1928 the city extended its corporate limits so as to take in Myers Park. The city thereupon took over the water and sewer system. Plaintiff sued for compensation, and recovery had below was affirmed. The Court said: "The second contention made by the defendant is that the plaintiff had nothing to sell to the city or nothing of value for which the city would be liable for the appropriation so made. This contention is determined adversely to the defendant by the decision of this Court in *(Abbott) Realty Co. v. Charlotte,* 198 N.C. 564." *Chief Justice Stacy* dissented, but the ground of his dissent is not stated. This case seems to support

the plaintiffs' view in our case, but we observe that the decision was based solely on the *Abbott Realty Co. case,* and without further examination of the facts upon which that decision was predicated.

In *Construction Co. v. Charlotte, supra,* it appeared that plaintiff had constructed, paid for, and owned water mains in Charlotte. In 1934 the city under power of eminent domain took over the water mains and appropriated same to its use and refused to pay for same. There was evidence that pursuant to agreement the city had been in possession of the water lines of plaintiff with plaintiff's permission. The Court said: "This evidence is sufficient to sustain the finding by the court that on or about 15 August, 1934, under its right of eminent domain, the defendant took the water mains described in the complaint from the plaintiff, and thereafter appropriated the same to its use as part of its municipal water system." This case does not afford us much help in the determination of the particular questions now presented by the case at bar.

The defendant's position, on the other hand, is that at the time the city extended its corporate limits the plaintiffs had no private property rights capable of being segregated or susceptible of being appropriated by the city; that the plaintiffs having laid out a real estate development, registered a plan thereof, constructed streets underlaid with water and sewer lines, and sold lots for residential purposes fronting thereon in connection with these facilities and services, had dedicated the means of service of these facilities to the lot owners and residents and to the public. The defendant interposes the further defense that the plaintiffs' action in connecting their water and sewer lines with those of the city, in the light of the city ordinances declaring that in the event of the incorporation of the territory in the city limits the water and sewer system with all fixtures and rights pertaining thereto should become the property of the city, constituted a waiver of the right to recover therefor from the city. Note is made of the fact that since its limits were extended the city has continued to furnish water and sewer service to the residents of this development and collect therefor in the same manner as it had previously been doing for twenty years.

The defendant calls our attention to four cases from other jurisdictions in support of its position. The first of these, taking them in chronological order, is *Ford Realty & Cons. Co. v. Cleveland,* 30 Ohio App. 1, decided in 1928. In this case the plaintiff claimed compensation for water mains and fixtures installed in connection with its real estate division in the village of West Park which was subsequently annexed by the city of Cleveland. Plaintiff based its claim in part on an agreement whereby the village of West Park had the right to use these mains, and that no action taken by the village would be deemed an appropriation, and on the subsequent agreement on the part of the city of Cleveland to

become liable for the obligations of West Park, plaintiff claiming equitable assignment. The plaintiff also based its claim on the ground that the city had taken its property without due process of law. The Court held that whether plaintiff claimed by "equitable assignment where there was nothing to assign, or any other way, or whether it claims by virtue of the taking of property without due process of law," the plaintiff was not entitled to recover. The Court also observed that the pipes were laid to enhance the value of lots, and doubtless the enhanced value was charged against the purchasers and included in the price of the lots.

In *Real Estate Co. v. Silverton,* 31 Ohio St. 452, decided in 1929, the facts were similar to those in the case at bar. The Real Estate Co. sued the incorporated village of Silverton to recover compensation for water mains and service pipes which it had installed in a subdivision adjacent to and which was subsequently annexed to the village. Plaintiff claimed right to compensation by reason of the appropriation of the water mains. There was no special legislation, arrangement, contract, or reservation with reference to these water pipes. The village continued to furnish water to the residents of the subdivision through the mains which had been laid by the Real Estate Company. The Court said: "This use would not necessarily mean appropriation or conversion of the mains and pipes." The Court held the village not liable, citing *Ford Realty & Cons. Co. v. Cleveland, supra,* and used this language: "Let us suppose that before annexation, all of the lots in the subdivision had been sold to purchasers, none of whom would have purchased but for the installation of the water supply, and the purchasers had erected residences complete throughout the subdivision, could the Suburban Real Estate Company sell and transfer the mains and pipes, etc., thus depriving the purchasers of lots of the benefit of water? We are of the opinion that, having sold the lots on the representation of furnishing water, and a means having been provided therefor, the Real Estate Company would not be heard to claim ownership in the water mains, with right to remove the same."

In *Danville v. Forest Hills Development Corp.,* 165 Va. 425, 182 S.E. 548 (decided in 1935) the Development Corp. sued to recover for water and sewer mains installed by it prior to annexation by the city of Danville. Recovery was denied. It was said the improvements were constructed in order to make the lots in the development salable and to provide water and sewerage as an inducement to the purchase of its lots. The Court said: "The Development Corporation had sold at the time of annexation a large number of high-priced lots in the subdivision which were served by these facilities, in the sale price of which the enhancement in value representing the cost of the improvements had doubtless been included." The *Charlotte cases, supra,* were referred to but not

followed. The Court further said, "When the water mains, pipes, etc., were constructed by the plaintiff as an inducement to the purchase of the lots, the plaintiff thereby dedicated said mains and pipes to the use of the lot owners and has no right to claim adverse ownership or remove same without such lot owners' consent."

In *Country Club Dist. Service Co. v. Village of Edina,* 214 Minn. 26, decided in 1943, a real estate development had been laid out in the village of Edina near Minneapolis, Minnesota. Under contract with the village, plaintiff or its predecessor constructed and paid for water mains, pipes and hydrants. This was done for the purpose of promoting sale of lots. Suit was subsequently brought to recover the value of these improvements. Recovery was denied. In this case it affirmatively appeared that those who laid out the real estate development and sold lots, advertised that the improvements were fully paid for and there would be no assessment therefor. The Court, however, discussed the question of liability of the municipality for water pipes in a real estate subdivision and quoted with approval from the Virginia case, *Danville v. Forest Hills Development Corp., supra,* to the effect that the mains, pipes and means of service to the purchasers of lots had been dedicated to their use and there was no right to remove them or claim adverse ownership. The Ohio cases, *supra,* were also cited and quotations therefrom inserted. The Charlotte cases, *supra,* were cited but distinguished.

These are the only decided cases bearing on the questions presented in the case at bar which have been called to our attention by counsel.

From an examination of the cases cited and the decisions based on the particular facts of those cases, it is apparent that no comprehensive rule emerges, and that this case and others of like nature must be considered and determined in the light of the pertinent facts presented by the record in each case.

In our case the plaintiffs in 1928 subdivided their real property adjacent to the city of Winston-Salem into streets and lots suitable for residential purposes and underlaid the streets with pipes and appliances for water and sewer service as appurtenant to the lots sold and to be sold. To procure this service for their development and to promote the sale of lots, the plaintiffs, with the consent of the city, connected their system with the city mains through an adjoining development, and the city thereafter supplied the water from its mains and furnished service through its sewer system to the residents of Konnoak Hills, making collection therefor according to the city ordinances and prescribed regulations, and since January 1, 1949, when the city limits were extended to include this area, has continued to furnish water and sewer service to residents in the same manner as during the preceding twenty years. There was no agreement or assumption of obligation for compensation on the

part of the city. Numerous lots have been sold and it was stated in the complaint that "scores of residences have been built upon the subdivision and vacant lots therein are in demand as residence sites." The city ordinances were in force at the time advising those outside the city who were permitted to connect with the city mains that whenever the territory in which they were located was incorporated within the city limits the water and sewer lines and "fixtures, equipment, easements, rights and privileges pertaining thereto" should become the property of the city. The plaintiffs' subdivision having been laid out within one mile of the corporate limits of the city, knowledge of its ordinances in the respects set out in G.S. 160-203 would be presumed.

.   Upon these facts, we reach the conclusion that the court below has correctly ruled that the plaintiffs were not entitled to compensation for the water and sewer lines in Konnoak Hills now controlled and maintained by the city of Winston-Salem, and that plaintiffs have not been wrongfully deprived of property rights therein by the incorporation of these lines in the city system consequent upon the extension of the city limits.

No error.

BARNHILL, J., concurring: The ordinance relied on by defendant, when considered in connection with the contract between plaintiffs and defendant, is significant on the question of title to the water and sewer mains which are the subject matter of this controversy. Under the ordinance and the contract executed pursuant thereto, when the city limits were extended so as to incorporate plaintiffs' development, the mains immediately became the property of defendant. Apparently this is conceded.

The real controversy here is as to the right of plaintiffs to compensation for the property thus acquired by the city. On this question, in my opinion, the ordinance is of no consequence. It has no bearing on the question either one way or the other, for a governmental unit may not, by legislative fiat, appropriate private property without paying just compensation therefor. *Hildebrand v. Telegraph Co.,* 219 N.C. 402. It may enact a law declaring that upon the happening of a certain event the title to property shall pass to and vest in such governmental unit. But this does not relieve it of the obligation to pay just compensation for the property so taken.

The plaintiffs had the right to install water and sewer mains in the streets of their development, contract with the city for sewer outlets through its system, purchase water wholesale from the municipality, and then retail these services to the purchasers of their lots as a business undertaking independent of the land development. Had they pursued

this course, the extension of the corporate limits of defendant city so as to incorporate the *locus* might have served to vest in defendant title to the water and sewer system thus maintained by the plaintiffs under the terms of the ordinance and the terms of the contract executed pursuant thereto—assuming, of course, that the contract for sewer outlets and for the purchase of water wholesale contained the same provisions as the one actually executed. However, such was not the course pursued. No doubt the plaintiffs deemed that method of furnishing those services to the purchasers of their lots too costly.

Instead, they installed the water and sewer mains, contracted with the city to furnish the contemplated services, and immediately surrendered possession of the mains to the defendant city. Since that time, and for more than twenty years, the city has operated the mains installed by plaintiffs as a part of its own system. In turn, plaintiffs have profited by the assurance that this valuable public service was available to all purchasers of lots in their development. No doubt they assessed the additional expense as a part of the original cost just as they did the expense of laying out the streets, clearing the property, and developing it for sale as building lots, and priced the lots accordingly. In any event, in my opinion, the surrender of possession to the city under the contract executed by them constituted a dedication to public use and they are now estopped by their conduct from claiming compensation therefor, irrespective of the terms of the ordinance. For this reason and this reason alone, I vote to uphold the verdict and judgment.