CHARLOTTE LUMBER & MANUFACTURING COMPANY v. CITY OF CHARLOTTE.

(Filed 4 May, 1955.)

1. **Municipal Corporations § 15a—Plaintiff held entitled to recover upon quantum meruit for sewer system constructed in reliance on unenforceable contract.**

The facts stipulated were to the effect that plaintiff contractor contemplated installing septic tanks for residences to be built in a certain development, that upon learning that the land would be taken into the city limits, the contractor entered into an agreement with the city engineering department under which the contractor was to construct at his own expense a sewer system for houses in the development in accordance with specifications agreed upon, in lieu of the septic tanks, and the city, upon incorporation of such system into its general sanitary sewer system, would compensate the contractor therefor. The amount of compensation was later agreed upon in a written contract between the contractor and the engineering department of the city. The city later took over plaintiff's sewer system as contemplated in the agreement. *Held:* Since the municipality had the authority to purchase sewer systems under the provisions of its charter, the city will not be allowed to escape liability on the ground that the contract was not signed by its mayor in accordance with the requirements of the city charter for the execution of a valid contract, but plaintiff is entitled to recover upon *quantum meruit* for the reasonable value of the sewer system appropriated.

2. **Same—**

Where a municipality appropriates sewer systems constructed by a private corporation at its own expense, the city may not contend that the corporation gave the sewer systems to the city by connecting its sewer line to the city's system without a valid contract, when the facts stipulated show that the city itself made the connection at the city's expense pursuant to authority of the city council.

3. **Evidence § 46d—**

A municipal engineer may testify as to the value of the sewer system appropriated by the city, when his testimony is based upon his personal knowledge and observation and a map prepared by him which fairly represents the sewer lines in controversy.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Patton, S. J.,* at 29 November, 1954 Extra Civil Term of MECKLENBURG.

Civil action to recover, as stated in case on appeal, (a) In *quantum meruit* the reasonable and just value of a sewerage system constructed by plaintiff for defendant municipality, in reliance upon an oral contract, or (b) the reasonable value of a sewerage system taken by defendant municipality, for a public purpose without compensating plaintiff, the owner, therefor.

The parties hereto waived trial by jury and agreed that the presiding judge might sit as a jury and find all facts, and determine issues of fact, subject to the usual rights of appeal by either party.

Thereupon, for the purpose of the trial, counsel for the parties stipulated in minute detail and at great length the true facts, which may be narrated in this manner:

In 1946 Morebilt Homes, Inc., and Greystone Homes, Inc., owned a tract of land located outside the 1928 city limits of defendant City of Charlotte, and described in the complaint. Pursuant to a common plan of said corporations to effect the subdivision of said land into residential lots and streets, and to improve same, Morebilt applied to Federal Housing Administration in November 1946, for permanent loan commitments for 71 housing units to be erected in the residential area, for which, in view of the fact that there was no sewer system within any part of said land, the application contained specifications requiring disposal of sewerage by means of individual septic tanks. The Federal Housing Administration approved the application in December 1946.

And plaintiff, Charlotte Lumber & Manufacturing Company, entered into a contract with Morebilt for the construction of the 71 housing units, and entered into contracts with Morebilt and Greystone for the ultimate construction of approximately 212 housing units within the general subdivisional area in each of which it was contemplated that sewerage disposal would be effected by use of individual septic tanks. But because of weather conditions in the winter of 1946-47, construction of the said 71 housing units was postponed and not begun until sometime in April 1947.

In the meantime, under authority of "An Act to Amend Chapter 366 Public-Local Laws of 1939, The Same Being The Charter of the City of Charlotte, So as To Provide For The Extension of the Boundaries of said City," P.L. 1947 Chapter 227, a referendum was called and held 28 April, 1947, for the City of Charlotte and the affected areas by virtue of which the city limits were extended effective 1 January, 1949.

Having learned of the proposed extension of the city limits so as to incorporate substantially all of the property described in the complaint, plaintiff began a series of conferences with the Engineering Department of the City of Charlotte for the purpose of determining whether or not a sewer system throughout the area could be installed in lieu of individual septic tanks for the purpose of serving the proposed 212 housing units.

"9. As a result of said conferences the following factors were developed:

"(a) That it would be desirable from the point of view of the City of Charlotte that initially a sewer system be constructed to serve the

said area; that if individual septic tanks were initially installed within said area the pending incorporation of said area within the city limits would in the near future necessitate the abandonment of such individual septic tanks and the construction of a sewer system; that a delayed construction of such a system would result in the tearing up of the paved streets planned for the area;

"(b) That the nearest sewer line to which such a sewer system could be connected was located within Marsh Road lying to the north of the said area described in paragraph 1; that however the natural gravity flow through such a sewer system would be southward away from Marsh Road; that there was no existing connection south of the location of such a sewer system southward to the City's main outfall line.

"(c) That the most satisfactory plan for sewerage disposal throughout the said area from the standpoint of the City, looking toward the eventual incorporation of such proposed sewer system as an integral part of the general sanitary sewer system of the City of Charlotte, would be the construction of a gravity system throughout the said area whereby the sewerage would flow southward to a point located at or near the newly proposed city limits from which point the sewerage would be pressure pumped back northward through a specially constructed line to the sewer line lying in Marsh Road.

"10. As a result of said conferences it was agreed, in so far as it could be agreed, by and between the Engineering Department of the City of Charlotte and Charlotte Lumber & Manufacturing Company as follows:

"(a) That Charlotte Lumber & Manufacturing Company would, at its own expense, construct and install a sewer system and pumping system throughout the said area all as described in paragraph 9 (c) above, which system would be installed and constructed under the supervision and with the approval of said City;

"(b) That Charlotte Lumber & Manufacturing Company would operate and maintain said sewer system and said pumping station until such time as the City constructed a connection from the southmost end of said sewer system southeasterly to the Sugar Creek outfall line, at which time the pumping station and pressure line would be abandoned and the sewer system would then be incorporated within the gravity sewer system of the City of Charlotte, N. C.;

"(c) That after the construction of the connecting line referred to in said paragraph (b) above the sewerage system would become the property of the City of Charlotte, N. C. and the City of Charlotte would compensate Charlotte Lumber & Manufacturing Company for such appropriation in accordance with the customary method of basis followed by said City for calculating the purchase price of sewer systems so acquired."

The agreement thus reached between the Engineering Department of the City of Charlotte and plaintiff was submitted to and approved by Federal Housing Administration in May 1947, provided, however, plaintiff "would assume full responsibility and operation of said pump and maintenance of the system until such time as it be incorporated and become a part of the composite gravity sewer system of the City of Charlotte, and provided further that pending the city's appropriation of such system and assumption of the operation and maintenance thereof, that the owner of each housing unit constructed within said area pay Charlotte Lumber & Manufacturing Company 50 cents per month toward the operation and maintenance of such system; that neither the amounts of said Federal Housing Administration's permanent loan commitments nor any applicable ceiling prices were effected by the said change in sewerage disposal plan."

Thereafter the agreements between plaintiff and the two corporations as owners of the property were amended to the effect that in lieu of septic tanks "the contractor, at its own expense, would construct a sewer system throughout said area and a pumping station and pressure pipe in connection therewith and would under the terms of its agreement with the City Engineering Department look to the City of Charlotte for the cost of such construction at the time of the eventual incorporation of such system into the composite gravity sewer system of said city," and "that pending the appropriation of such sewer system by the City of Charlotte and the assumption by said city of the operation and maintenance thereof" plaintiff "would assume full responsibility for the operation and maintenance of such sewer and pumping system."

Plaintiff, Charlotte Lumber & Manufacturing Company, then proceeded to construct and install such sewer system, and the pumping station in connection therewith, serving a total of 208 housing units; "that such system was constructed and installed under the supervision of and was approved by the city of Charlotte," and plaintiff "paid the City of Charlotte inspection fees for such inspection and approval." And plaintiff operated and maintained said system until its appropriation by the City of Charlotte and the city's assumption of such operation and maintenance.

The Council of the City of Charlotte, on 7 March, 1951, authorized the letting of bids for the construction at the expense of the city a connecting line between the southernmost tip of the sewer system owned by plaintiff southeasterly to the Sugar Creek outfall sewer line, and shortly thereafter "the Engineering Department of the City of Charlotte calculated the exact price it had agreed, in so far as it could have been agreed, to pay plaintiff in accordance with the customary formula of compensation and the resulting figure of $17,760 was submitted" to

plaintiff and verbally acknowledged by it to be in accordance with the aforesaid agreement.

Subsequently the construction by the city of such supplemental sewer line just referred to was begun, and was completed on or about 8 February, 1952, at which time the City of Charlotte connected such supplemental system to the southern terminus of the sewer system of plaintiff, and appropriated the latter system and assumed maintenance and operation thereof. In the meantime, plaintiff had operated and maintained its sewer system and pumping station at its own expense and with funds made available by the owners of housing units within the area at the rate of 50 cents per month; and at the time of the connection made by the city, plaintiff discontinued and abandoned the pumping station, as well as the 50 cents monthly charge.

Later on 5 September, 1952, the Engineering Department of the City of Charlotte reduced to writing its agreement with plaintiff, and prepared a form of bill of sale from plaintiff to the city for use in effecting the conveyance of said sewer system to the city, wherein it was recited that the compensation for such appropriation was to be $17,760; $15,000 of which was to be paid upon execution of said instrument of conveyance with a final payment of $2,760 to be made upon the completion of 14 additional housing units within the area served.

The parties further stipulated that those sections of Chapter 366, Public-Local Laws of 1939 General Assembly of North Carolina, being the Charter of the City of Charlotte referred to in defendant's answer, are in words and figures as set forth in the answer; that Section 31 (25) of the Charter grants to the City of Charlotte the power "To establish systems of sewerage and works for sewage disposal, and to extend and build the same beyond the corporate limits when deemed necessary, to permit owners of residences or industrial plants outside the limits of the City of Charlotte to connect to the sewerage system of said City of Charlotte and to remove said sewage through its system as is now done for residents of said city"; and that all of such sections were in force and effect on the dates referred to, and need not be otherwise proved.

It is also stipulated that plaintiff is a corporation duly organized and existing under the laws of North Carolina; that the defendant is a municipal corporation, duly created and existing under the laws of the State of North Carolina, having all the powers of a municipal corporation, including the authority to authorize the construction of, and to purchase and maintain, sewer lines and systems, and its Charter is set forth in Chapter 366 of the Public-Local Laws of the General Assembly of 1939, as amended; and that plaintiff made demand upon defendant in accordance with letter of plaintiff's attorneys, dated 5 March, 1953, a copy of which is attached to the answer herein.

And the parties further stipulated that either party may introduce further evidence not in conflict with the above stipulations of fact.

Plaintiff offered the testimony of Lloyd G. Richey, Engineer of the City of Charlotte, stipulated to be an expert witness and permitted as an adverse witness, to the effect: That in his opinion the just and reasonable value of the sewer system concerned in this action in February 1952 was $17,760, which amount he testified he figured in 1952 at the time the line went into the city system by gravity. And that no part of this sewer system could be torn up or removed without inconvenience of property owners in the subdivision.

At the conclusion of all the evidence, motion of defendant for judgment as of nonsuit was allowed, and from judgment in accordance therewith plaintiff appeals to Supreme Court and assigns error.

*Lassiter, Moore & Van Allen for plaintiff, appellant.*
*John D. Shaw for defendant, appellee.*

WINBORNE, J. Appellant plaintiff states this as question involved on this appeal: Did the trial court err (1) in allowing defendant's motion for judgment as of nonsuit?, and (2) in the exclusion of certain evidence of value?

In connection with the first division of the question, the defendant in its answer to the allegation of the complaint in respect to an agreement between it and the Engineering Department of the City of Charlotte averred that the Engineering Department of the City of Charlotte had no authority to enter into any agreement, and specifically pleaded provisions of the City Charter in these respects: "The mayor shall sign all written contracts or obligations of the city and no contract of the city required to be in writing shall be binding upon the city until signed by the mayor . . ." and that "all contracts shall be signed by the mayor or mayor *pro tem,* and attested by the city clerk and approved as to form by the city attorney and certified by the city accountant, as provided by law, before becoming effective."

However, it is not contended that the City of Charlotte was without power to enter into contracts in respect to sewerage systems. Quite to the contrary, it is provided in the City Charter, Section 65, "that the City of Charlotte may enter into contracts, when duly authorized by a majority of the City Council, with any person, firm or corporation whereby sewer or water lines may be laid within or without the city and connected to the system of said city under such terms as may be agreed upon."

Conceding, therefore, that plaintiff had no written contract with the City of Charlotte, signed by the mayor, as required by the City Charter,

P.L.L. 1939, Chapter 366, and, hence, has no enforceable contract with the city for the sewer system which the city took over on 8 February, 1952, and incorporated into the gravity sewer system of the city, decisions of this Court hold that in such case plaintiff is not without a remedy—it may recover on basis of *quantum meruit* for the reasonable and just value of the sewer system. *McPhail v. Commrs.*, 119 N.C. 330, 25 S.E. 958; *Abbott Realty Co. v. City of Charlotte*, 198 N.C. 564, 152 S.E. 686; *Board of Commrs. v. Inman*, 203 N.C. 542, 166 S.E. 519; *Moore v. Lambeth*, 207 N.C. 23, 175 S.E. 714; *Hawkins v. Dallas*, 229 N.C. 561, 50 S.E. 2d 561.

Indeed the case of *Abbott Realty Co. v. City of Charlotte, supra,* is similar in factual situation to that of case in hand. This Court, while holding that plaintiff had failed to sustain its contention that defendant was liable to it on the contract alleged in the complaint, the defendant should be and is liable for the reasonable and just value of the sewers, if the jury should find that after their construction, defendant took them over and incorporated them into its municipal sewerage system. In the instant case that the city has taken over and incorporated the plaintiff's sewer system into its composite gravity sewer system, is stipulated as a fact.

But appellees contend "that when the plaintiff attached its sewer line without a valid contract as provided in Section 65 of the City Charter of the defendant it is within the purview of such legislative enactment that it gave it to the city." This is a *non sequitur*. There is nothing in the record tending to show any intention on the part of plaintiff to give the sewerage system to the city. And the facts stipulated fail to show that plaintiff made the connection. On the other hand, the stipulated facts do show that the construction of a connecting line was made by authority of the city council at the city's expense, and that on 8 February, 1952, after it was completed, the City of Charlotte made the connection, and appropriated plaintiff's system of sewerage and assumed the maintenance and operation of it.

Appellee cites and relies upon the case of *Spaugh v. Winston-Salem*, 234 N.C. 708, 68 S.E. 2d 838. The facts in that case differ in material aspects from those in the present case. Hence it is not controlling here.

As to the competency of the testimony of the witness Richey: He testified that he prepared the map which was attached to and made a part of the stipulations of fact, and that the map fairly represented the sewer lines about which this case is concerned; and that in his opinion the just and reasonable value of the sewer system in February 1952 was $17,760, which amount he testified he figured in 1952 at the time the line went into the city system by gravity. Thus it is apparent that the

witness was testifying from personal observation and knowledge.  See
*S. v. Hightower,* 187 N.C. 300, 121 S.E. 616.

For reasons stated the judgment as of nonsuit is

Reversed.

BARNHILL, C. J., took no part in the consideration or decision of this
case.