J. G. JACKSON, JANIE L. LOFTIN, F. L. JACKSON, R. A. JACKSON, R. M. JACKSON AND E. E. JACKSON v. THE CITY OF GASTONIA.

(Filed 7 June, 1957.)

**1. Municipal Corporations § 15a—**

Where the owner of a subdivision outside a municipality constructs water and sewer lines and permits purchasers of lots to tap into the lines without charge, the municipality, upon the extension of its limits to include the subdivision, is liable to the owner of the subdivision or his heirs in *quantum meruit* for the value of the water and sewer lines in the absence of charter or contractual provision to the contrary, when the municipality takes over, uses and controls the said lines as its own.

**2. Same: Dedication § 1—**

The owner of a subdivision does not dedicate water and sewer lines constructed by him to the public at large by permitting the purchasers of lots in the subdivision to tap into the said lines without charge, since a dedication must be made to the use of the public in general and not to any particular part of it.

APPEAL by plaintiffs from *Campbell, J.,* at 10 December, 1956 Term of GASTON.

Civil action to recover, as stated in the case on appeal, the reasonable value of water and sewer lines taken by the defendant municipality for a public purpose without compensating the plaintiffs, who had installed, maintained and were the owners of the said lines prior to the time they were taken over by the defendant.

The parties waived trial by jury and agreed that the presiding judge should sit as a jury and find all the facts, and determine all issues, subject to the usual rights of motions and appeal by either party.

The parties stipulated facts substantially as follows:

(1) Plaintiffs are all the heirs at law of John Frank Jackson, who died 13 November, 1948, leaving a last will and testament, which is duly probated and recorded in office of Clerk of Superior Court of Gaston County, North Carolina, in Will Book 7, at page 167, under which James G. Jackson and Earl E. Jackson were appointed executors with full power of sale of any and all property, and said executors thereafter duly qualified and were acting as such at the times involved in this action, and under Item VIII of said will any and all property owned by John Frank Jackson was bequeathed to the plaintiffs herein.

(2) In the year 1922 John Frank Jackson owned over two hundred acres of land situated about one mile south of the corporate limits of the city of Gastonia, the defendant, suitable for residential purposes. And in October of that year John Frank Jackson had a portion of this property platted into residential lots for the purpose of sale,—the plat being recorded as indicated, from which plat he proceeded to sell lots. Later in same year he had a large portion of the remainder of his property platted into a certain subdivision, from which he proceeded to sell and convey residential lots. This plat was not recorded until the year 1937. On these plats streets were laid out and dedicated to the use of the purchasers of said lots and of the general public. And in the year 1939 John Frank Jackson also had an additional plat showing other land. This plat has not been recorded, although deeds conveying such (residential) lots make reference to it. Other portions of the land were deeded without reference to any plat.

(3) "To increase the salability of his lots," John Frank Jackson, in the years 1936, 1939, 1941 and 1946, at his own expense, extended certain sewer lines, specifically described, tapping same to existing sewer line outside the corporate limits of defendant, and privately owned. In the year 1949, the heirs of John Frank Jackson at their own expense made other extension of the sewer line, and installed certain water lines. All this is shown on the composite map made a part of the stipulation. Installation of the water line and "said sewer lines in the dedicated streets were to serve the purchasers and owners of lots therein," and no charge was made against the purchasers or owners of the lots so sold for taps to said lines for serving said lots with water or sewer, but the expense of said connections or taps from said lines to said lots were borne entirely by the owners and purchasers of the lots.

(4) The defendant, City of Gastonia, prior to 1 November, 1950, the date on which the territory embracing "the subject lines" was incorporated into the corporate limits of the city, exercised no control or maintenance over said lines, but did furnish its water through said lines, and did require water meters on the taps from said water line to the residential lots and collected charges for the quantity of water used by the

purchasers of the lots. However "the defendant did not collect any sewer charges from any residence on the lots tapped on the sewer lines. And after the territory embracing the water line and sewer lines were incorporated into the corporate limits of the city, *the defendant has taken over, used and controlled said water and sewer lines to the same extent as if said lines had been installed by the defendant originally.*" (Emphasis added.)

(5) Practically all of the lots in said subdivision were sold prior to the incorporation of said subdivision into the corporate limits of the city of Gastonia; and "between the year 1922 and November 1, 1950, residential homes were constructed on the great majority of the residential lots sold and taps by the purchasers of the lots and owners of said residences to the water line and to the various sewer lines permitted by John Frank Jackson or the plaintiffs." The purchasers of the various lots connected their residences with the water line, and sewer lines, at their own expense without paying a tapping charge to him or them, and have since that time purchased water from the city of Gastonia, "but were under no obligation of any kind to pay" John Frank Jackson or plaintiffs "any portion of said expense or other remuneration for water obtained from said lines, nor for the use of the water or sewer lines."

(6) Defendant, a municipal corporation, under and by virtue of Section 55 of its Charter (Chapter 199 of Private Laws of 1913) and by virtue of G.S. 160-239, *et seq.,* and G.S. 160-225, *et seq.,* has the power to operate and establish and provide a water and sewer system and to make charges to the users thereof, and further, has the power and authority under said charter and the General Statutes of North Carolina to acquire property by purchase or by eminent domain for public purpose, including the use thereof for constructing or maintaining water and sewer systems, facilities and works.

(7) At the time the water and sewer lines, which are the subject of this action, were installed defendant had no charter provision nor ordinance providing any terms, condition or event under which water or sewer lines installed outside its corporate limits by private owners and connected to its water or sewer system would become the property of the defendant if later incorporated into its city limits.

(8) But prior to 1 November, 1950, the defendant had a policy requiring any private owner installing a water or sewer line outside of its corporate limits, which was to be connected to or serviced by defendant's water or sewer system, to permit the defendant to approve the proposed installation, and after the installation of such outside line to inspect same in order that defendant could see that the installation was proper to the extent of not allowing water leakage. And at the time the water line and the sewer lines involved in this controversy were

installed the defendant through its agents, its superintendent of public utilities or the city engineer approved the proposed installation and made the inspection, but thereafter exercised no supervision, control or maintenance over said line. John Frank Jackson or plaintiffs maintained the lines at their own expense and without reimbursement or obligation to reimburse them for any expense, by the purchasers of lots, who were to pay them no further compensation for the use of the lines.

(9) No written contract has been entered into by the defendant or any of its agents with the plaintiffs or John Frank Jackson for the purpose of sale of the lines involved in this controversy.

(10) At an election duly called and held, on 3 April, 1951, the city of Gastonia was authorized to issue bonds for the purpose of installing and extending its water, sewer and electric systems in the old corporate limits, as well as the new corporate limits.

(11) Defendant in the early part of 1950 had an appraisal and survey made of the water and sewer lines in the area proposed to be annexed and to determine which lines the defendant felt could be incorporated into its water and sewer system to serve this area.

(12) But before the bonds were sold the decision by the Supreme Court of North Carolina in *Spaugh v. Winston-Salem*, 234 N.C. 708, 68 S.E. 2d 838, was rendered, as a result of which the defendant declined to pay plaintiff for the value of the said water and sewer lines.

(13) The recovery of the plaintiffs, if any, is based on *quantum meruit* and the agreed reasonable values of the lines involved in this controversy based on the appraisal the defendant had made early in 1950, are as set forth in paragraph 14 of the stipulated facts.

Motion of defendant, made at the close of all the evidence, for judgment as of nonsuit was allowed, and the action dismissed.

Plaintiffs appeal therefrom to Supreme Court and assign error.

*L. B. Hollowell and Hugh W. Johnston for Plaintiffs Appellants.*
*J. Mack Holland, Jr., and James B. Garland for Defendant Appellee.*

WINBORNE, C. J. Of the underlying questions to be properly considered on this appeal, appellee states in substance this one: Did the defendant wrongfully take possession of the water and sewer lines which are the subject of this controversy and appropriate the same to its own use without compensation therefor? In the light of the agreed facts this Court is constrained to hold that this question must be answered in the affirmative. The cases of *Farr v. Asheville*, 205 N.C. 82, 170 S.E. 125, and *Spaugh v. Winston-Salem*, 234 N.C. 708, 68 S.E. 2d 838, upon which defendant, appellee, mainly relies are distinguishable in factual situation from that of the case in hand,—and are not controlling here.

In the *Farr case, supra,* the owner of a subdivision outside the corporate limits of a city constructed water mains therein, and for his own convenience and profit connected them with the city water system, and the city furnished water through such mains to the residents of the development, collecting water rentals from the residents; and thereafter the corporate limits of the city were extended to include the development, and the city continued to furnish water to the residents of the development in the same manner as before the extension and without any assertion of ownership of the mains installed by plaintiff. The Court held that the evidence to this effect is insufficient to show a taking or appropriation of the plaintiff's main,—that the mere extension of the city limits does not amount to a wrongful taking or appropriation of plaintiff's property.

In the instant case the stipulated facts show that the city of Gastonia, after the territory embracing the water and sewer lines was incorporated into the corporate limits of the city, "the defendant has taken over, used and controlled said water and sewer lines to the same extent as if said lines had been installed by the defendant originally."

And in the *Spaugh case, supra,* it is recited that the city ordinances were in force at the time, advising those outside the city who were permitted to connect with the city mains that whenever the territory in which they were located was incorporated within the city limits the water and sewer lines and "fixtures, equipment, easements, rights and privileges pertaining thereto" should become the property of the city. And that plaintiffs' subdivision having been laid out within one mile of the corporate limits of the city, knowledge of its ordinances in the respect set out in G.S. 160-203 would be presumed.

Indeed in the *Spaugh case, Devin, C. J.,* writing for the Court, after reviewing pertinent decisions of this Court, and of other jurisdictions, had this to say: "From an examination of the cases cited and the decisions based on the particular facts of those cases, it is apparent that no comprehensive rule emerges, and that this case and others of like nature must be considered and determined in the light of the pertinent facts presented by the record in each case."

While in the instant case it is agreed (1) that no written contract has been entered into for the purchase of the water and sewer lines here involved, and (2) that at the time these water and sewer lines were installed, the defendant had no charter provision nor ordinance providing any terms, conditions, or event under which the lines installed outside its corporate limits by private owners and connected to its water or sewer system should become the property of the defendant if later incorporated into its city limits, and (3) that the city has "taken over, used and controlled" said lines as if installed by it originally, decisions

of this Court hold that in such case plaintiff is not without a remedy—it may recover on basis of *quantum meruit* for the reasonable and just value of the water and sewer lines. *Mfg. Co. v. Charlotte,* 242 N.C. 189, 87 S.E. 2d 204.

Moreover the transactions between plaintiffs and purchasers of lots in respect to water and sewer lines do not purport to be public dedications for the benefit of the city. Indeed text writers say that "there is no such thing as a dedication between owner and individuals. The public must be a party to every dedication. In fact the essence of a dedication to public uses is that it shall be for the use of the public at large. There may be a dedication of land for special uses, but it must be for the benefit of the public, and not for any particular part of it . . . In short the dedication must be made to the use of the public exclusively, and not merely to the use of the public in connection with a user by the owners in such measure as they may desire." 16 Am. Jur. 359, Dedication Section 15.

Therefore the judgment below is reversed, and the cause remanded to the end that judgment be entered in accordance with the stipulations of the parties as to reasonable value of the lines so taken over, used and controlled.

Error and remanded.