JOHN S. COVINGTON, JR. AND WIFE, PAULINE M. COVINGTON v. CITY OF ROCKINGHAM.

(Filed 4 February, 1966.)

**1. Municipal Corporations § 35—**

A municipality may establish a charge for sewerage service and require all users to pay for such service whether they live within or without the corporate limits, G.S. 160-249, and such charge is not a tax, but a charge for the use of the sewer facilities of the municipality in the disposal of polluted water and sewage which drains into the disposal system of the municipality.

**2. Municipal Corporations § 16—**

Whether a city commits acts amounting to an appropriation of a private sewerage system connected to its sewerage disposal system must be determined in accordance with the facts of each particular case.

**3. Same—**

Defendant municipality exacted a charge for sewerage service upon a private company whose sewer was connected with a sewer line constructed by and running through the lands of plaintiffs and thence into the city's outfall line. *Held:* The imposition of the charge does not amount to an appropriation of plaintiffs' private sewerage system.

APPEAL by defendant from *Phillips, E.J.,* February 1965 Civil Session of RICHMOND.

Plaintiffs own and operate a service station located on their tract of land situate at the southwestern intersection of U. S. Highway No. 1 and Midway Road in what was formerly Watson Heights, a suburb of the City of Rockingham, North Carolina.

This action arose out of a series of events which began in 1948, when plaintiffs began installing a system of sewer lines on their property. The sewer lines were completed, at intervals, by plaintiffs in October 1952, at a cost of $2,240.50. Plaintiffs' sewer system was connected with the City of Rockingham's outfall or sewer line, located under U. S. Highway No. 1, which emptied, at that time, into Falling Creek.

In February 1957, the Watson Heights section was annexed to Rockingham. On 1 February 1962, the governing board of the City of Rockingham, as authorized by G.S. 160-249, established a charge for sewerage service of 50% of the water bill. All individual property owners who were water customers of the City of Rockingham were, and still are, required to pay this sewer service charge.

The defendant's outfall or sewer line under U. S. Highway No. 1, to which plaintiffs' original line was connected in May 1948 and which emptied raw sewage into Falling Creek, was connected with the City of Rockingham's sewer disposal system or plant sometime prior to 1 February 1962.

The plaintiffs permitted the Ro-Jan Motel and a towel store owned by the motel to connect with one of the sewer lines installed by plaintiffs. The plaintiffs have no financial interest in the motel or the towel store.

It was stipulated by the parties hereto that no written contract has ever been entered into by the parties for the purchase and sale of said sewer lines from the plaintiffs to defendant.

Since 1 February 1962, plaintiffs have continued to make demand on defendant for payment for the sewer lines allegedly appropriated, and tendered in their complaint an easement "of a reasonable width in order that the defendant may have the right to maintain said sewer lines * * *."

Plaintiffs seek to recover $1,684.41, the alleged depreciated value of the sewer lines, and interest on said sum from and after 1 February 1962, at the rate of 6% per annum.

The court below refused to submit but one issue to the jury, which was as follows:

"What amount, if anything, are the plaintiffs entitled to recover of the defendant for the appropriation of the sewer lines constructed by the plaintiffs prior to the annexation of the plaintiffs' property by the defendant as alleged in the complaint?

"Answer: $1684.41, plus interest at 6% until paid, from Feb. 1, 1962."

From the signing of the judgment for plaintiffs, the defendant appeals, assigning error.

*Pittman, Pittman & Pittman for plaintiffs appellee.*
*Deane & Deane, and J. Mack Holland, Jr., for defendant appellant.*

DENNY, C.J. The defendant assigns as error the refusal of the court below to sustain its motion for judgment as of nonsuit made at the close of all the evidence.

It is clear from the evidence that in May 1948 plaintiff husband constructed an eight-inch sewer line, 58 feet in length, from a manhole in Rockingham's sewer outfall under U. S. Highway No. 1, to his premises, and at the end of this line constructed a manhole on the premises of plaintiffs. From this manhole the plaintiffs ran laterals through their property aggregating 379 feet. According to plaintiffs' evidence, these sewer lines were installed for the exclusive purpose of serving plaintiffs' filling station and developing their own property. The plaintiffs maintain a trailer camp on the premises and the trailers are connected to one of the sewer lines installed by plaintiffs. Whether the plaintiffs required the Ro-Jan Motel to pay for the connection with their sewer system is not disclosed by the record.

There is no evidence tending to show that the defendant has exercised a scintilla of control over the sewer lines installed by the plaintiffs, unless the establishment of the charge for sewerage service is so construed. However, we think the tender of an easement, made in the complaint, is tantamount to an admission that the defendant, up to that time, had not exercised any control over these lines by way of maintenance or by selling and making connections thereto. The tender of the easement, according to the complaint, was made "in order that the defendant may have the right to maintain said sewer lines." These lines were not constructed within the area of proposed streets but on the private property of the plaintiffs, and, insofar as the record discloses, the property has never been subdivided or further developed.

Plaintiffs contend that by establishing a charge for sewerage service and the collection of such charge from them and the Ro-Jan Motel and the towel store, all of whose sewage passes through plaintiffs' lines into defendant's sewer system, in effect, constituted an appropriation of plaintiffs' property, and the court below so charged the jury.

A municipality may establish a charge for sewerage service and require all its water customers to pay for such service whether such

customers live within or without the corporate limits of such municipality. G.S. 160-249.

The pertinent question raised on this appeal is whether or not the defendant's establishment of a charge for sewerage service amounted to a taking of plaintiffs' property, thereby creating a liability on the part of the defendant to pay the plaintiffs for the reasonable value of the sewer lines involved. This question must be determined in light of the facts in this particular case. *Spaugh v. Winston-Salem,* 234 N.C. 708, 68 S.E. 2d 838.

In *Huntley v. Potter,* 255 N.C. 619, 122 S.E. 2d 681, Moore, J., speaking for the Court, said:

> "Where there is no contract or municipal ordinance involved and the territory served by private water or sewer lines is annexed to a municipality, the owner of the lines may not recover the value thereof from the municipality unless it appropriates them and controls them as proprietor. The bare extension of the city limits does not amount to a wrongful taking or appropriation of the lines. Maintenance as a voluntary act on the part of the city does not amount to a taking of the property. *Farr v. Asheville,* 205 N.C. 82, 170 S.E. 125."

The case of *Farr v. Asheville,* 205 N.C. 82, 170 S.E. 125, tried before a jury, and in many respects similar to the instant case, involved the question of whether there had been a taking of plaintiffs' water and sewer system. The facts relied on by the plaintiffs to show a taking were not considered sufficient to make out a case, and this Court held that the motion for nonsuit should have been allowed. The Court said:

> "* * * The city owned a water line on the western boundary of the development, and also another line on Kimberly Avenue, which is east of the Farrwood development. The Farrwood construction was made in 1923 or 1924, and the city began furnishing water through the pipes claimed by the plaintiffs and collected water rentals from users within the area. The repairing of a leak and the flushing of a dead-end was incident to furnishing water. * * * Neither does the fact that a connection was made to the Farrwood Avenue lines outside the development constitute a wrongful appropriation of plaintiffs' property. In the last analysis the plaintiff built a private water system, and for his own convenience and profit, connected it with the city system on the east and west of his development. The city immediately began to furnish water to residents in the subdivision on the completion of the system and has continued

to do so up to the time the suit was brought * * * without any change in its methods and without any assertion of ownership of the water pipes laid by the plaintiffs. * * *"

In *Manufacturing Co. v. Charlotte*, 242 N.C. 189, 87 S.E. 2d 204, there was a verbal contract that the city would pay for the private sewer system when the involved area was taken into the city. This Court held the contract was void since it was not in writing, but that the plaintiff was entitled to recover on *quantum meruit* because, as stipulated, the city had "assumed maintenance and operation thereof." In *Jackson v. Gastonia*, 246 N.C. 404, 98 S.E. 2d 444, it was stipulated that the City of Gastonia had "taken over, used and controlled * * * water and sewer lines to the same extent as if said lines had been installed by the defendant (City) originally." These and similar cases relied on by the plaintiffs are not controlling on the facts in this record.

This Court, in *Spaugh v. Winston-Salem, supra,* said:

"From an examination of the cases cited and the decisions based on the particular facts of those cases, it is apparent that no comprehensive rule emerges, and that this case and others of like nature must be considered and determined in the light of the pertinent facts presented by the record in each case."

The foregoing statement was quoted with approval in *Jackson v. Gastonia, supra.*

In the case of *Candler v. Asheville*, 247 N.C. 398, 101 S.E. 2d 470, this Court quoted with approval from the case of *City of Seymour v. Texas Electric Service Co.*, 66 F. 2d 814 (C.C.A. 5), *(certiorari* denied 290 U.S. 685, 78 L. Ed. 590) as follows:

" '* * * In owning and operating a utility plant a city acts not in a governmental but in a proprietary capacity, (but) when the council, exerting the power to regulate, comes to fix rates it represents not the city, as proprietor, but the State, as regulator. It exerts not the contractual power of the city, but the sovereign power of the state.' "

In Rhyne, Municipal Law, Sewers and Drains, § 20-5, page 462, *et seq.,* it is stated:

"The power of a municipal board or body to fix charges or rates for sewer service is legislative in character (see *Taxpayers & Citizens, etc. v. Board of W. & S. Comm'rs.*, 261 Ala. 110, 73 So. 2d 97) * * *.

"It is the majority rule that sewer service charges are neither taxes nor assessments, but are tolls or rents for benefits

received by the user of the sewer system; thus, a sewer rate fixed on the basis of assessed property values is invalid.

"* * * The overwhelming weight of authority holds that sewer service charges based on the amount of water used on the premises is a reasonable and valid regulation."

In the case of *Oliver v. Water Works & Sanitary Sewer Board,* 261 Ala. 234, 73 So. 2d 552, the Supreme Court of Alabama, in considering the question of the validity of a sewer service charge, said:

"* * * There is here no assessment of a tax for the construction of sewers in whole or in part, but only a charge for the required use * * * of the facilities of the city which is a burden imposed by authority of law upon city dwellers for the privilege of so residing, to prevent impairment of health and comfort of all the city dwellers alike."

In *Patterson v. City of Chattanooga,* 192 Tenn. 267, 241 S.W. 2d 291, the Court, in considering a charge for sewerage service, said:

"* * * (T)hese charges are for special benefits received and enjoyed by all users of the sewer system and are not taxes in the sense in which we ordinarily think of taxes. * * *

"* * * Here the user of water is assessed a certain amount for the use of the sewer which under ordinary circumstances is a necessary incident for the user of water to have to dispose of the sewage and water after it is used and polluted. It is upon these users alone that the charge is made and not upon the property as a whole but as the various property owners and properties become users of water they are charged for this service measured by the quantity of metered water supplied them. * * *

"The establishment and maintenance of a sewer system by a city is ordinarily regarded as an exercise of its police power. McQuillian, Sec. 1545. 'The construction of a sewer is the exercise of the police power for the health and cleanliness of the municipality, and such power is exercised solely at the legislative will. * * *.' "

In *Carson v. Sewer Commissioners of Brockton,* 182 U.S. 398, 45 L. Ed. 1151, it is held that the adoption of an ordinance establishing a charge of 30 cents per 1,000 gallons of sewage delivered to the sewer — the quantity so delivered to be determined by the meter readings — was not a taking of property without due process of law.

With the rapid growth of our cities and towns, it is becoming more and more essential for them to construct modern disposal plants or systems for the treatment and disposal of sewage. It is no longer safe or practical to permit the emptying of large quantities of raw sewage into our creeks and rivers; such practices constitute a health hazard that is now claiming the attention of our health authorities throughout the State.

We hold that a properly adopted ordinance of a municipality establishing a sewerage service charge, is not in the nature of a tax for the use of the users' sewer facilities, but it is a charge for the use of the sewer facilities of the municipality in the disposal of polluted water and sewage which drains into the disposal system of the municipality.

Therefore, on the facts disclosed by the record in this case, we hold that the defendant has not taken over or appropriated to its own use the sewer facilities installed by the plaintiffs, and that the court below committed error in not sustaining defendant's motion for judgment as of nonsuit. The ruling on said motion and the judgment entered below are

Reversed.